## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

METRC, INC., METRC ID, LLC

        Plaintiffs,

   v.

MARCUS ESTES,

        Defendant.

Case No. 8:24-cv-01252-WFJ-CPT

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION

Plaintiffs METRC, INC. ("METRC") and METRC ID, LLC (collectively, "Plaintiffs"), hereby file this Response in Opposition to Defendant Marcus Estes' ("Defendant") Motion to Dismiss the Complaint for Lack of Personal Jurisdiction ("Response") as follows:

### I.    INTRODUCTION

Plaintiffs filed the Complaint in this action on May 23, 2024, asserting two counts for breach of contract and one count for tortious interference with advantageous business relationships. On June 20, 2024, Defendant filed his Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Rule 12(b)(2) of the Fed. Rules of Civ. Procedure, and appears to have moved to dismiss, under Rule 12(b)(6), Plaintiffs' Tortious Interference Claims. Plaintiffs aver that the Court has both specific and general jurisdiction over Defendant, and that Defendant's extensive contacts with

the state of Florida satisfy any due process concerns. Further, Plaintiffs have sufficiently stated a claim for tortious interference at this stage of the proceedings.

## II.    STATEMENT OF FACTS

### A.    Metrc's Business

Metrc, headquartered in Lakeland, Florida, is a trusted and experienced provider of cannabis regulatory systems in the United States. Compl. ¶ 1. Metrc uses advanced software and radio-frequency identification ("RFID") technology as a means to track and trace cannabis from growth, harvest, and processing to testing, transport, and sale to ensure no inversion of diversion of production. *Id.* All services provided by Metrc, including customer support, product design and engineering, and administrative functions, are provided out of its office in Lakeland, Florida. *Declaration of David Eagleson,* ¶ 5. In addition, Metrc's Retail ID technology, discussed herein, was developed and tested out of Metrc's offices in Lakeland, Florida. *Id.*

### B.    Metrc's Acquisition of Defendant's Company, Chroma.

In April 2023, Metrc, through its subsidiary, acquired Chroma Protocol Corporation ("Chroma"), a company engaged in developing open-source barcode labelling software. Compl. ¶ 11; Eagleson ¶¶ 6-10. Defendant Marcus Estes was the CEO/Founder of Chroma. Eagleson at ¶ 6; Declaration of Jesse Naranjo, ¶ 7. Defendant and Metrc engaged in months-long negotiations regarding Metrc's purchase of Chroma, eventually leading to the consummation of Metrc's acquisition of Chroma Signet in Florida. *Id.* During the negotiations, Defendant met with Metrc's

2

agents to discuss the terms of the purchase in Florida. Naranjo ¶ 7. Defendant also travelled to Florida to close the acquisition. *Id.* Throughout the negotiations, Defendant was aware that Metrc was a Florida-based company, and that most its personnel worked in Florida. Eagleson Decl. ¶¶ 10.

### C. Defendant Stays On as Metrc's EVP, and Works with Metrc's Florida-Based Product Development Team.

As a condition of the acquisition, Metrc offered Defendant the ability to stay on at Metrc in the role of Metrc Executive Vice President. However, Metrc allowed Defendant perform his role as EVP of the Company from his residence in Oregon. Eagleson Decl. ¶ 10. The terms of Defendant's employment were memorialized in the Company's Offer Letter Agreement. (See D.E. 1-1).

In his position as EVP, Defendant worked closely with Metrc's Retail ID Product Director, who mainly operates out of Florida. Eagleson ¶ 13. Defendant also worked closely with Metrc's product development team located at Metrc's headquarters in Lakeland, Florida. *Id.* ¶¶ 10-14. Defendant was also in charge of advancing the production of Retail ID in anticipation of its launch, which was in development in Florida. *Id.* Defendant communicated, supervised, and relied on Florida personnel, almost exclusively, in his role as EVP. *Id.*

Defendant attended numerous virtual video conferences and meetings with Florida-based personnel including his supervisors, the majority of whom were based in Florida. *Id.*; Naranjo ¶¶ 4-6. Defendant also attended numerous meetings with developers for the Retail ID product based in Florida, frequent meetings with Product

3

Director David Eagleson, and almost daily meetings with the Florida-based product team to discuss client development and outreach. *Id.*

> **D.    For his Role as Metrc EVP, Defendant Executes the Offer Letter Agreement and Restrictive Covenant Agreement.**

In the Offer Letter Agreement, Metrc provided substantial compensation to Defendant as consideration for his continued services as EVP. **Compl. Ex. 1** (D.E. 1-1).  Part of Metrc's compensation package to Defendant included a one-time signing bonus of $100,000 to be paid within fifteen days of Defendant's start date with Metrc (the "Signing Bonus"). *Id.* However, the Offer Letter provided that if Defendant's employment terminated prior to his second anniversary with the Company, for any reason whatsoever, Defendant was required to repay to Metrc the Signing Bonus within thirty (30) days. *Id.*

Additionally, in connection with his continued service as EVP of Metrc, on March 31, 2023, Defendant executed the Restrictive Covenant Agreement (the "RCA"). Compl. Ex. 2, (D.E. 1-2). In the RCA Defendant agreed that, for a period of two years after the termination of his employment (the "Restrictive Period"), he would not**:**  induce or attempt to induce any of Metrc's customers or business partners to cease doing business with the Metrc's, or to reduce the amount of business previously done or contemplated to be done by the Company. Compl. Ex. 2, ¶ 1(iii) (D.E. 1-2).

> **E.    Defendant Is Terminated for Poor Performance.**

On April 9, 2024, just over a year into his employment with Metrc, Defendant was terminated due to his underwhelming performance. Shortly after his termination,

4

Defendant contacted two of Plaintiffs' principal customers, H and W, and sent disparaging and false information regarding Metrc and the development of Retail ID[1], using his knowledge and influence as Metrc's Former EVP to facilitate the contact. As a result of Defendant's communications with H and W, both clients contacted Metrc representatives and expressed their concerns about their continued involvement with the rollout of Retail ID, thereby jeopardizing the launch of a product that Metrc had spent millions of dollars developing.

Defendant has also refused to return his Signing Bonus to Metrc..  It should be noted that while the Offer Letter did not explicitly state how the Signing Bonus was to be repaid, the only place where Defendant could have rendered payment is directly to Metrc at its headquarters in Lakeland, Florida.

### III.    ARGUMENT

#### A.    Legal Standard

"A plaintiff seeking to obtain jurisdiction over a non-resident defendant initially need only allege sufficient facts to make out a prima face case of jurisdiction." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999). "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Peruyero v. Airbus S.A.S.*, 83 F. Supp. 3d 1283, 1286 (S.D. Fla. 2014) (*citing Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir.

---

[1] Retail ID is a revolutionary product that allows an end-user or regulator to scan the QR code placed on the packaging of a cannabis plant or product and instantaneously verify its history from seed to sale. It is Metrc's newest technology.

2000)). The district court must construe all reasonable inferences in the light most favorable to the plaintiff. *Peruyero*, 83 F. Supp. 3d at 1287 (citations omitted)

To determine whether it has personal jurisdiction over a nonresident defendant, a federal district court sitting in diversity must: (1) consider whether there is a basis for the assertion of personal jurisdiction under Florida's long-arm statute, and (2) determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

## B.   The Court has Jurisdiction over Defendant under Florida's Long-Arm Statute.

The Court has specific personal jurisdiction over Defendant pursuant to Florida's long-arm statute for several reasons.. First, Defendant's sale of his business, Chroma, along with his extensive contacts and involvement directly with Metrc personnel and products in Florida, constitutes "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state," Fl. Stat. § 48.193(1)(a)(1). Second, Defendant's tortious interference with Metrc's business relationships, specifically inducing clients H and W to cease business dealings with Metrc at the expense of its business in Florida, caused injury within Florida sufficient to satisfy the long-arm statute. *See* Fl. Stat. § 48.193(1)(a)(2). *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013) (holding that, under Florida law, "a nonresident defendant commits 'a tortious act within [Florida]' when he commits an act *outside* the state that causes *injury within Florida*.'") (emphasis in original). Third, Plaintiffs sufficiently pled enough facts regarding Defendant's

breach of the Offer Letter to show that performance was required in Florida.

Moreover, Defendant's extensive contacts with Florida, whether through the sale of Chroma to Metrc, or through his EVP role overseeing Metrc's Lakeland-based product development team, was "substantial and not isolated activity" within the state to satisfy the long-arm statute's general jurisdiction requirements.    Fla. Stat. § 48.193(2).

1.   The Court has Jurisdiction over Defendant under §48.193(1)(a)(1)

i.    *Defendant Failed to Refute Metrc's Allegations Regarding His Dealings in Florida.*

In his Opposition, Defendant recites a plethora of allegations that Metrc set forth in the Complaint regarding Defendant's dealings in Florida, which included: the sale of Chroma to Metrc in Florida, initiating and taking place in videoconference and emails with Metrc's product development team in Florida, conducting Florida-based projects on Metrc's behalf, attending frequent meetings with Florida-based developers for Metrc's Retail ID Product; attending weekly go-to market meetings with Metrc's Florida-based personnel, and working closely with Metric's Retail ID Product Director, who was based in Florida. *See, e.g.,* Compl. ¶ 6. *See also* Eagleson ¶¶ 4-5, 10-16; Naranjo ¶¶ 4-6. Further, Defendant's supervisor(s) and project teams were located in Florida, and all of the work actually performed by Defendant was for the benefit of Metrc's operation lines and business in Florida. Eagleson Decl. ¶¶ 4-5, 10-16; Naranjo Decl. ¶¶ 4-6.

But Defendant does nothing to refute these allegations, nor does he address

them directly.  *See* Mtn. to Dismiss at p. 7.  Instead, he merely asserts, in conclusory fashion, that he has no "personal or personal business" connection to Florida. *Id.* at ¶ 7.  He continues by stating that he has only *physically* visited Florida one time in connection with his work for Metrc, and that he worked remotely from his home in Oregon. Defendant's allegation that he travelled to Florida only once is false.  *See* Naranjo Decl. ¶¶ 7-9. And his remaining allegations do not negate that all, or substantially all of the work Defendant performed was with Metrc's Lakeland, Florida-based product development and marketing teams.  For all intents and purposes, Defendant was operating as if he worked out of Metrc's headquarters in Lakeland, Florida, communicating multiple times daily with these individuals.  When Defendant sold Chroma to Metrc (a Florida limited liability company) in April 2023, he travelled to *Florida* to consummate the sale, for which he was handsomely compensated.  *Id.* Further, when Defendant chose to stay on as EVP of Metrc and oversee its Florida product development team, he *again travelled to Florida* to discuss his role with and meet the product development team.  *Id.* Thus, Estes engaged in a business venture within the state, even if his physical contact with the forum was limited. Compl. ¶ 6.

Section 48.193(1)(a)(1) extends personal jurisdiction over any defendants "[o]perating, conducting, engaging in, or carrying on a business or business venture" within Florida. Whether this subsection is satisfied depends on the unique facts of each case. *Kapila v. RJPT, Ltd.,* 357 So. 3d 241, 246 (Fla. 2d DCA 2023), *review denied*, No. SC2023-0862, 2023 WL 6785604 (Fla. Oct. 13, 2023) (citing *James v. Kush,* 157 So.2d 203, 205 (Fla. 2d DCA 1963)). The court cannot resort to a mechanical test, but instead

8

must judge the quality and nature of the activity involved. *Id.* Defendant's activities "must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *April Indus., Inc. v. Levy*, 411 So. 2d 303, 305 (Fla. 3d DCA 1982) (citations omitted). Defendant easily satisfied this standard here.

The decision in *Kapila* is instructive. In *Kapila*, the defendant, a Texas investment firm, was sued in Florida for recovery of certain distributions of its ownership interest in a Florida limited liability company. *Id.* at 244-45. The trial court initially dismissed the suit for lack of personal jurisdiction, ruling that the defendant's investment "was entirely passive.". *Id.* at 245. However, the appellate court reversed, stressing that although defendant had no employees or *physical* office space in Florida, he had engaged LIS, a Florida limited liability company, for the purpose of acquiring membership interests for profit, he analyzed the Florida company's financials and then flew to Florida <u>one time</u> to meet with its management and board. *Id.* at 247-48 (emphasis added). After the close of the deal, he then continued to trade LSI's membership interests for profit thereafter. *Id.* Accordingly, defendant's activities in Florida were not merely passive, and the trial court erred in finding no personal jurisdiction. *Id.* at 248.

The facts are analogous here. Defendant is not some corporate officer with only a passive interest in Metrc. Rather, he actively sold his company to Metrc in Florida after traveling to Florida to negotiate the deal, and then stayed on to actively oversee Metrc's Florida-based development team for the rollout of its new product (designed in Florida) Retail ID—again travelling to Florida to meet his team and participate in

marketing strategy meetings. The fact that he was allowed to perform these functions remotely does not cut against his considerable engagement within the state of Florida that was carried out for his pecuniary benefit. He further consummated this relationship by signing an Offer Letter Agreement sent from Metrc's headquarters in Lakeland, Florida, and executed a Restrictive Covenant Agreement to be governed by Florida law. *See* Compl. Exs. 1 and 2 (D.E.s 1-1; 1-2). This, coupled with the extensive daily interactions with and supervision of Metrc's teams in Florida, is more than sufficient to hold that Plaintiff was engaged in a business or business venture within Florida.

### ii.    *The Corporate Shield Doctrine Does Not Apply.*

In his Response, Defendant relies upon the corporate shield doctrine to evade personal jurisdiction in Florida, citing *Kitroser v. Hurt*, 85 So. 3d 1084, 1088 (Fla. 2012) and *Doe v. Thompson*, 620 So.2d 1004 (Fla. 1993) in support. Both cases are inapposite. The "corporate shield doctrine" only provides that corporate officers may not be sued in Florida for acts taken ***while acting in their corporate capacity*** outside of Florida. *See White v. Discovery Commc'ns, LLC*, 365 So. 3d 379, 384 (Fla. Dist. Ct. App. 2023) (emphasis added). Plaintiffs have not located any cases where the doctrine was applied to the tortious acts of an individual taken after their relationship with the corporation ended, and thus taken outside the course and scope of the employment (and with no authority to act on behalf of the corporation). In denying to apply the corporate shield doctrine in *Elandia,* the Southern District of Florida reasoned as follows:

> Defendants have cited to us no cases applying the corporate shield doctrine in the manner that they urge in this case. Indeed, all the cases they cite to us for application of this doctrine are clearly distinguishable cases, involving non-intentional negligence torts **committed while acting within the scope of an agency or employment relationship**. Those cases are illustrative, in fact, of what the doctrine was designed to do. **None of them involved the type of intentional torts alleged here against individuals acting** in both representative and **non-representative capacities**. For that reason, this argument designed to shield these Defendants from jurisdiction in this forum fails.

690 F.Supp.2d at 1332.

Given that Defendant's actions here are alleged to have occurred *after* his termination from Metrc and outside the course and scope of his employment, the corporate shield doctrine does not apply.

2. <u>The Court has Jurisdiction over Defendant under §48.193(1)(a)(2) with Respect to Its Tortious Interference Claims.</u>

In the Complaint, Plaintiffs assert that the Court has specific jurisdiction over Defendant pursuant to 48.193(1)(a)(2), which provides for jurisdiction "for any cause of action arising from' [] defendant's '[c]ommi[ssion] [of] a tortious act within this state.'" *Mighty Men of God*, 102 F. Supp. 3d at 1271 (quoting Fla. Stat. § 48.193(1)(a)(2)).

Defendant's argument in response to jurisdiction under § 48.193(1)(a)(2) is vague. Defendant initially acknowledges that physical presence is not a prerequisite for committing a tort in Florida (Mtn. to Dismiss p. 9). Defendant is correct. *See, e.g., Cable/Home Commun. Corp. v. Network Prods.*, 902 F.2d 829, 858 (11th Cir. 1990) ("In our technologically sophisticated world permitting interstate business transactions by

11

mail, wire, and satellite signals, physical presence by the nonresident defendant is not necessary for personal jurisdiction in the forum state."). But then Defendant argues that because the interfering communications to Metrc's clients H and W were not made "*into* Florida," there can be no personal jurisdiction based purely on the tortious interference claims. Defendant misconstrues the law.

A non-resident commits a tortious act "within Florida" when he commits an act outside the state *that causes injury within the state*. *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008) (emphasis added). *See also Internet Solutions Corp. v. Marshall*, 557 F.3d 1293 (11th Cir. 2009)(citing *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002)). Indeed, "[a] Florida plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the non-resident's state of residence to obtain a remedy." The Supreme Court in *Calder* made clear that "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Calder v. Jones*, 465 U.S. 783, 790 (1984).

Focusing in on the claims of tortious interference, allegations of intentional tortious acts by defendants in their states of residence calculated to cause injury in Florida are sufficient to create jurisdiction under Florida's long-arm statute. *Wood v. Wall,* 666 So. 2d 984, 986 (Fla. 3d DCA 1996); *Alleteron v. State Dep't of Ins.,* 635 So.2d 36, 40 (Fla. 1st DCA 1994) (jurisdiction established under Florida long-arm statute where Florida plaintiff was "injured by the intentional misconduct of a nonresident corporate employee expressly aimed at him."); *Sun Bank, N.A. v. E.F. Hutton & Co.,* 926

F.2d 1030, 1033-34 (11th Cir. 1991) (same). In fact, "as a general matter, courts interpreting [former Section 48.193(1)(b)] have routinely found personal jurisdiction over foreign defendants who committed intentional torts outside of Florida that caused injuries inside Florida." *Nat'l Numismatic Certification, LLC v. eBay, Inc.,* Case No. 6:08-cv-42-Orl-19GJK, 2008 U.S. Dist. LEXIS 109793, *33 (M.D. Fla. Jul. 8, 2008)(citing *Robinson v. Giamarco & Bill, P.C.,* 74 F.3d 253, 257, n. 2 (11th Cir. 1996); *Licciardello,* 544 F.3d at 1283 (citing *Posner,* 178 F.3d at 1216) (same)). Accordingly, this court has *in personam* jurisdiction over defendant under § 48.193(1)(a)(2).

### 3. The Court has Jurisdiction over Defendant under §48.193(1)(a)(7).

Defendant entered into two written agreements with Plaintiffs which are the subject of this litigation: the Offer Letter and the Restrictive Covenant Agreement. At minimum, the Court has personal jurisdiction under the Offer Letter, given Defendant's failure to repay the Signing Bonus to Metrc in Florida.

"Failure to pay a contractual debt where payment is due to be made in Florida is sufficient to satisfy Florida's long-arm provision that refers to contractual acts 'required' to be performed in Florida." *Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 643 (Fla. 4th DCA 2013) (citing *Global Satellite Commc'n Co. v. Sudline*, 849 So.2d 466, 468 (Fla. 4th DCA 2003)). "Florida courts have consistently held that where the contract is silent as to place of payment, **it is presumed to be the place of residence of the payee.**" *Glob. Satellite*, at 468 (emphasis added). *See also*, *Hartcourt Companies, Inc., v. Hogue*, 817 So. 2d 1067, 1070 (Fla. 5th DCA 2002). Here, Metrc's principal place of

business and headquarters is in Florida, Defendant's contacts with Metrc were with Metrc's officers, agents, and employees located in Florida, and the offer letter was specifically transmitted for Defendant's execution from Florida, with payment to be made to Metrc in Florida. *See* Compl. ¶ 6; Ex. 1.[2] Metrc has always operated out of Florida, as Defendant is well-aware. Therefore, the payment for return of the Signing Bonus was to be rendered in Florida, which is sufficient to confer *in personam* jurisdiction pursuant to § 48.193(1)(a)(7).

The instant circumstances are analogous to those in *Global Satellite*. The court there found that:

> while the contract does not specifically state where payment would be made, under the foregoing case law, it would be presumed that payment was to be made in Florida. Thus, [Defendant's] failure to make payment in Florida would meet the requirements of the long-arm statute.

*Id.*

Here, Defendant asserts that the Offer Letter did not require performance in Florida. However, the Offer Letter was sent from Metrc's headquarters with an address located in Lakeland, Florida. Further, Metrc is *only* located within Florida, it does not have offices in other states where Defendant would have expected to tender his repayment of the Signing Bonus, nor has Defendant attempted to identify any other

---

[2] The entity which entered into the agreement with Defendant was MCS Acquisition, LLC which underwent a name change to Metrc ID, LLC. Compl. ¶ 2, Metrc ID, LLC's sole member is Metrc, LLC, and Metrc's sole member is Metrc, Inc., whose principal place of business is in Florida. *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) ("[P]rincipal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities.... And in practice it should normally be the place where the corporation maintains its headquarters…).

state where payment could have been rendered.  Accordingly, this Court has *in personam* jurisdiction under § 48.193(1)(a)(7) pursuant to the Offer Letter.

### C.    The Court has General Jurisdiction over Defendant under §48.193(2)

Defendant's sole basis for arguing that the Court does not have general jurisdiction over him is due to the "corporate shield doctrine." (Mtn. to Dismiss, pp. 15-16).  But, as stated above in Section III(B)(1)(ii), the corporate shield doctrine is inapplicable here.[3]

Moreover, Defendant's contacts with Florida were not limited just to his employment, as Defendant suggests. Defendant disregards that his relationship with Metrc originated from the negotiation and sale of his former company, Chroma, to Metrc (itself a Florida-based limited liability company), over the span of several months. These negotiations required constant contact with Metrc's agents, all Florida-based residents, as well as travel to Florida. Further, Defendant's dealings with Metrc, prior to and post-employment, should have been sufficient to put him on notice that he would be haled into court in Florida should he attempt to breach his contracts or otherwise harm Metrc, as he did.  This, when coupled with the innumerable contacts Defendant had with Florida through his role as EVP to Metrc, including his post-acquisition travel to Florida, are sufficient for the Court to confer general jurisdiction.

---

[3] Even assuming the doctrine were to apply, under Florida law, the corporate shield doctrine no longer operates where the corporate officer commits intentional tortious acts aimed at a defendant within the forum state, as is alleged here. *Lovelady,* 544 F.3d at 1285–88 (under the "effects test" a defendant purposefully availed himself of the forum state, without regard to his other contacts with the forum when the tort: "(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state.").

**D.    Defendant's Contacts with Florida Satisfy Due Process Concerns.**

The next step of the personal jurisdiction inquiry requires that the Court determine whether personal jurisdiction satisfies the requirements of the Due Process Clause. *See, e.g., United Techs. Corp. v. Mazer*, 556 F.3d 1260,1275 (11th Cir. 2009).  To satisfy the Due Process Clause, the defendant's conduct and connection with the forum state have to be such "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). "This 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Licciardello*, 544 F.3d at 1284 (citations/quotations omitted)).

Even a defendant's single act can give rise to such a connection to the forum state that it supports the exercise of *in personam* jurisdiction. *See, e.g., Burger King v. Rudzewicz,* 471 U.S. 462, 475 (1985). "It is thus well recognized that intentional torts are classic examples of such acts that give rise to jurisdiction over a non-resident defendant who has no other contacts with the forum state." *Elandia,* 690 F. Supp. 2d at 1338 (*citing Licciardello,* 544 F.3d at 1285).  In *Licciardello,* the Eleventh Circuit held that the commission of an intentional tort by a non-resident defendant expressly aimed at a resident, the effects of which were felt by the resident in the forum state, satisfied the "effects test" established by the Supreme Court in *Calder v. Jones,* 465 U.S. 783, 789-90 (1984). 544 F.3d at 1288 (citations omitted).  As a result, the Due Process clause is

not violated where the court exercises personal jurisdiction over a defendant who committed a tort outside of the forum state that was intended to or was likely to cause injury in the forum state, "because the defendant must have reasonably anticipated being haled into court in the forum state regarding those actions." *Elandia,* 690 F. Supp. 2d at 1338 (citing *Brennan v. The Roman Catholic Diocese of Syracuse, N.Y., Inc.,* 322 Fed. Appx. 852, 2009 WL 941765, at *4-5 (11th Cir. 2009)).

As set forth above, Defendant's contacts with Florida were extensive, and his breaches and tortious conduct were aimed at, and felt by, Metrc in Florida. Tortious interference with business relations or tortious interference with contract causes harm in Florida when the victim is a Florida resident. *XN Fin. Servs., Inc. v. Conroy*, No. 12-80143-CIV, 2012 WL 12873512, at *4 (S.D. Fla. Mar. 5, 2012) (citing *Posner,* 178 F.3d at 1216-17 (finding allegations in complaint of actions amounting to tortious interference with contract done out of Florida with effects felt in Florida sufficient to create personal jurisdiction in Florida); *Lehigh Tech., Inc. v. Farrah*, 2:08–cv–53–FtM–29SPC, 2009 WL 179672, at *5 (M.D. Fla. Jan. 23, 2009) (same)."Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct by non-residents causing injury in Florida." *Elandia,* 690 F. Supp. 2d at 1339.

Furthermore, Plaintiffs here have an interest in obtaining convenient and efficient relief which is best served by litigating the case in Florida. Defendant will also not be significantly burdened by litigating the case in Florida as Defendant, an individual, could more easily travel, should it be required. However, the reverse

17

scenario would significantly burden Metrc. To require Metrc, a Florida company with no offices, agents, or business in Oregon and almost all of its employees in Florida, to litigate in Oregon for Defendant's comfort would certainly be more burdensome than for Defendant to appear in Florida as an individual. For these reasons, this Court's exercise of *in personam* jurisdiction over Defendant comports with the Due Process clause of the Fourteenth Amendment.

### E. Plaintiffs Have Sufficiently Pled a Claim for Tortious Interference.

Defendants' argument in his motion to dismiss[4] is two-fold: that Plaintiff failed to plead what "type" of relationship it had with customers H and W, and that, even if Metrc did, it failed to allege damages as a result of the interference.  Defendant's arguments are misplaced.

Plaintiffs have identified two specific and identifiable customers with whom Defendant interfered shortly after being terminated from Metrc. Compl. ¶¶ 27-44. While Defendant has sought to maintain the confidentiality of its customers and business partners by way of abbreviation in its publicly filed Complaint, Defendant is well-aware of what customers Metrc is referring to, and makes no allegation that he was *unable* to identify the customers being referred to in the pleading. Plaintiffs even went through great lengths to describe these customers' operations and lines of

---

[4] On a motion to dismiss, the Court should accept the non-conclusory allegations in the complaint as true and evaluate all plausible inferences derived from those facts in favor of the Plaintiffs. *See Hughes v. Lott*, 350 F.3d 1157, 1159–60 (11th Cir. 2003) (internal citation omitted); see also Cobb, 293 Fed.Appx. at 709; *Brown v. Budget Rent–A–Car Syst., Inc.*, 119 F.3d 922, 923 (11th Cir.1997)." *Finn v. Kent Sec. Services, Inc.*, 981 F. Supp. 2d 1293, 1296 (S.D. Fla. 2013).

business, and why they were so critical to the launch of Retail ID given their market position. Compl. ¶¶ 27-41. Plaintiffs further alleged that Defendant was uniquely positioned to have influence over these particular customers if he were to make any disparaging comments or otherwise interfere with Metrc's business. *Id.* Aside from providing the explicit statements made, verbatim, Plaintiffs have pled every allegation that Defendant requires to be on notice of the tortious interference claims against him.

Under Florida law, Plaintiffs are not even required to identify *specific* relationships interfered with, and could have instead identified the relationships by category or type. *See Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So. 2d 812, 814 (Fla. 1994) (finding that claim for tortious interference with "customers, past[,] present and future" not recoverable only for past customers). Regardless, Plaintiffs have identified the relationships with the required specificity.

Further, Defendant claims that Plaintiffs failed to allege damages. "A plaintiff can recover three types of damages in a claim for tortious interference: (1) 'the pecuniary loss of the benefits of the contract'; (2) consequential losses legally caused by the interference; and (3) emotional distress or reputational harm, 'if they are reasonably to be expected to result from the interference.'" *SIG Sauer, Inc. v. D&M Holding Co., LLC*, 8:21-CV-0194-KKM-SPF, 2022 WL 445747, at *7 (M.D. Fla. Feb. 14, 2022).

Florida courts have found that alleged interference with ongoing relationships and contracts is enough to survive a motion to dismiss. In *ZSR Patlayici Sanayi A.S. v. Sarac Distributors LLC*, 2020 WL 3895709, at *3 (M.D. Fla. July 10, 2020), the

defendant and counter-plaintiff, Sarac, alleged that ZSR "interfered with ongoing relationships and contracts that ZSR had with identifiable purchasers," which the Court "accepted as true." *Id.* To the extent the defendant argued that the relationships and damages stemming from those relationships were "speculative," the district court left it to discovery to determine the issue. *Id.* at *3. Other courts have found that damage to reputation and goodwill are sufficient to proceed on a claim or tortious interference. *See, e.g., Sig Sauer, Inc. v. D&M Holding Co.,* Case No. 8:21-cv-0194-KKM-SPF, 2022 WL 445747, at * (M.D. Fla. Feb. 14, 2022) (holding that damage to reputation and goodwill from employee departures sufficient for claim of damages for tortious interference); *Open Sea Distribution Corp. v. Artemis Distribution, LLC*, 692 F.Supp.3d 1151, 1206 (M.D. Fla. 2023) (Loss of goodwill suffices as damages for tortious interference claim).

Plaintiffs have sufficiently alleged that Defendant's actions of defaming and spreading misinformation regarding Metrc and its Retail ID product were deliberate attempts to interfere with its customer relationships with Metrc's customers H and W, and that the action was taken to jeopardize the product launch of Retail ID. Compl. ¶¶ 27-44, 64-67. Defendant's actions caused harm to the relationship and goodwill with these customers (Compl. ¶ 66-67), and that is all that is required to be pled at this stage.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Defendant's Motion to Dismiss.

Dated this 22ⁿᵈ day of July, 2024

Respectfully submitted,

FORDHARRISON LLP

*/s/ Nicholas S. Andrews*
Edward B. Carlstedt, Esquire
Florida Bar No. 0136972
ecarlstedt@fordharrison.com
Nicholas S. Andrews, Esquire
Florida Bar No. 0105699
nandrews@fordharrison.com
401 East Jackson Street, Suite 2500
Tampa, FL 33602
Telephone (813) 261-7800
Facsimile (813) 261-7899
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on July 22 2024, a true and correct copy of the

foregoing was electronically filed with the Clerk of the Court by way of the CM/ECF

system which will send a notice of electronic filing to Andrew DeWeese, to email

address andrew@andrewdeweese.com, 55 NW Yeon Ave # 527. Portland, OR 97210.

*/s/ Nicholas S. Andrews*
Attorney