## ASSIGNMENT OF INVENTIONS, NON-DISCLOSURE, NON-COMPETITION AND NON-SOLICITATION AGREEMENT

This Assignment of Inventions, Non-Disclosure, Non-Competition, and Non-Solicitation Agreement *(this "Agreement")* between MCS Acquisition LLC *("Company")*, and Marcus Estes *(the "Employee")* is hereby entered into as of April 7, 2023.

### Recitals:

**A.** As of the date of this Agreement, the Company and its Affiliates *(as the term "Affiliate" is defined in Section 1(h) hereof)* are engaged in **(i)** computer hardware and software development and maintenance; **(ii)** systems design of computer hardware and software products and services and of component products and services in radio frequency identification *("RFID")* and blockchain systems; **(iii)** a continuous program of research, development, production, marketing and sales in connection with RFID, blockchain, and its many applications (including without limitation cannabis supply chain tracking); and in the future, Company expects to engage in additional related and unrelated businesses. *(All of the aforesaid activities and future activities of the Company and its Affiliates are referred to herein as the "Business.")*

**B.** The Company and its Affiliates conduct the Business throughout the United States of America, in Canada, and in various other countries throughout the world.

**C.** The Employee currently is or will be employed by the Company, and the Company is in a confidential relationship with the Employee. In the course of employment with the Company, the Employee will become familiar with and aware of information as to the specific manner of doing business and the customers and suppliers of the Company and its Affiliates, the future plans with respect thereto, and their contracting activities, all of which will be established and maintained at great expense to the Company and its Affiliates; and virtually all of which information constitutes trade secrets and valuable goodwill of the Company.

**D.** The Employee recognizes that the Business of the Company and its Affiliates is reliant upon the use of certain confidential information, including **(a)** trade secrets, and **(b)** other information that is **(i)** of any value or significance to the Company and its Affiliates, and **(ii)** not generally known to competitors of the Company nor intended by the Company for general dissemination, including *(but not limited to)* any and all proprietary and technical information of the Company involving its business operations, manufacturing processes, techniques and methods, know-how, operating systems, associated procedures and systems, products and equipment, components, formulae, technology, designs, drawings, engineering, computer software, source codes, object codes, accounting and financial data, customer lists, customer data, pricing and discounting practices, market data, marketing and distribution methods and arrangements, marketing materials, sales, costs, quality controls, risk management, insurance, finances, capital structure, financial models, projections, billings, profits, losses, business organization, contracts, agreements, inventions, plans, current or potential suppliers and vendors, sources of supply, special programs relating to sales, project files, prospect reports, service, training, call books, territory printouts, and information about the Company itself and its executives, managers, officers, directors, employees, distributors and sales representatives, and offers to purchase other entities or their assets or to sell the Company or its assets, and all related negotiations *(collectively, "Confidential Information")* made available to the Employee by the Company, and that the protection of the Confidential Information is of critical importance to the Company and its Affiliates.

**E.** The Employee has agreed to keep in confidence and not use the Confidential Information for the Employee's commercial benefit, and the Employee recognizes that the Company will sustain great loss and damage if the Employee should violate the provisions of this Agreement and that monetary damages for such losses would be extremely difficult to measure.

Exhibit 6

Exhibit 2

F.   Any obligation of the Employee, as set forth in the preceding paragraphs, shall apply to Confidential Information disclosed in writing and designated or obviously recognizable as being confidential, or if disclosed orally, any such information that may be promptly reduced to writing.

G.   The Employee recognizes that the training of the Employee by the Company, the Employee's access to Confidential Information, and other investments by the Company in the development of the Employee may be made by the Company in preparation for a sale of substantially all of the assets of the Company or some other transfer of the Company itself to an acquiring entity.

NOW, THEREFORE, in consideration of the Employee's services to the Company, whether being currently performed or to be performed in the future; the aforesaid preamble, reference clarifications, and recitals, which are incorporated herein and made a part hereof; the mutual promises, terms, covenants and conditions set forth herein; and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged; the Company and the Employee hereby agree as follows:

1.   **Non-Competition and Non-Solicitation**.

(a)   The Employee agrees that he or she shall not, during the term of the Employee's employment with the Company and for a period of two (2) years following termination of the Employee's employment with the Company *(the "**Noncompete Period**")*, alone or by combining or conspiring with others or in any other manner whatsoever, within the borders of the United States of America and elsewhere throughout the world:

(i)   directly or indirectly *(through one or more intermediaries)* run, own, manage, operate, control, be employed by, provide consulting services to, be a manager of, participate in, lend the Employee's name to, invest in or be connected in any manner with the management, ownership, operation or control of any entity, organization, business, venture or activity that **(x)** competes with *(as the phrase "**competes with**" is defined below in **Subsection (h)(iii)** of this **Section 1**)* the Business or any part thereof as conducted by the Company, any Affiliate of the Company, or any purchaser of substantially all of the assets of the Company in order to carry on the Business *(an "**Acquiror**")* during the term hereof or at any time after the date hereof or **(y)** in any way provides or may provide services similar to those provided by the Company or any of its Affiliates or an Acquiror that constitute, relate to, or concern the Business. The Employee shall not be considered to be in default of this Section 1 solely by virtue of the Employee holding for portfolio purposes, as a passive investor, not more than one percent (1%) of the issued and outstanding equity securities of a corporation, the equity securities of which are listed or quoted on a national stock exchange or a national over-the-counter market;

(ii)   directly or indirectly *(through one or more intermediaries)*, without the prior written consent of the Company, solicit, recruit, offer employment, employ, engage as a consultant, lure or entice away or in any other manner persuade or attempt to persuade any person who is an employee or consultant of the Company or any of its Affiliates, to leave the employ of, or reduce the Employee's services to, the Company or any of its Affiliates or an Acquiror, unless such person has been terminated by the Company or any of its Affiliates;

(iii)   contact any past, present or potential customer of the Company or any of its Affiliates or an Acquiror, for the purpose of **(x)** providing any service provided by the Company or any of its Affiliates or an Acquiror or **(y)** inducing or attempting to induce the entity to cease doing business with the Company or any of its Affiliates or an Acquiror, or reduce the amount of business previously done or contemplated to be done by the Company or any of its Affiliates or an Acquiror, for such entity or entities;

(iv)   contact any past, present or potential vendor, supplier or other provider to the Company or any of its Affiliates or an Acquiror, for the purpose of obtaining any services or commodities if

the effect thereof could be expected to interfere with, disturb, interrupt or reduce the amount or level of such services or commodities available to the Company or any of its Affiliates or an Acquiror; or

**(v)** contact any prospective acquisition candidate, prospective Acquiror, or potential business partner of the Company or any of its Affiliates, on the Employee's own behalf or on behalf of any other person or entity, which acquisition candidate, prospective Acquiror, or potential business partner was either called upon by the Company or its Affiliates or for which the Employee or the Company or its Affiliates made an acquisition analysis while the Employee was employed by the Company.

**(b)** It is recognized and hereby acknowledged by the parties hereto that a breach by the Employee of any of the covenants contained in this Section 1 of this Agreement will cause irreparable harm and damage to the Company or its Affiliates or an Acquiror, the monetary amount of which may be virtually impossible to ascertain. As a result, the Employee recognizes and hereby acknowledges that the Company and its Affiliates and an Acquiror shall be entitled to an injunction from any court of competent jurisdiction enjoining and restraining any violation of any or all of the covenants contained in this Section 1 of this Agreement by the Employee or any of his or her Affiliates, partners or agents, either directly or indirectly, and that such right to injunction shall be cumulative and in addition to whatever other remedies the Company and its Affiliates and an Acquiror may possess at law or in equity *(including, without limitation, damages at law)*. This Section 1, subsection (b) shall survive the termination of the Employee's employment or the termination of this Agreement for any reason. The provisions of this Agreement shall be enforceable in law and in equity notwithstanding the existence of any claim or cause of action by the Employee against the Company or its Affiliates or an Acquiror, whether predicated on this Agreement or otherwise.

**(c)** The parties agree that the covenants contained in this Section 1 impose a reasonable restraint on the Employee in light of the Business, and the activities and future plans of the Company and its Affiliates.

**(d)** The covenants in this Section 1 are severable and separate, and the unenforceability of any specific covenant shall not affect the provisions of any other covenant. In the event any court of competent jurisdiction shall determine that the scope, time or territorial restrictions set forth in this Section 1 are unreasonable, then it is the intention of the parties that such restrictions be enforced to the fullest extent which such court deems reasonable, and the provisions of this Section 1 shall thereby be reformed.

**(e)** Each of the covenants contained in this Section 1 shall be construed as a covenant independent of any other provision of this Agreement, and the existence of any claim or cause of action of the Employee against the Company or any of its Affiliates or an Acquiror, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by the Company or its Affiliates or an Acquiror of such covenants.

**(f)** The Noncompete Period shall be computed by excluding from such computation any time during which the Employee is in violation of any provision of this Section 1 and any time during which there is pending in any court of competent jurisdiction any action *(including an appeal from any judgment)* brought by any person, whether or not a party to this Agreement, in which action the Company or any of its Affiliates or an Acquiror seeks to enforce the covenants contained in this Section 1 or in which any person contests the validity or enforceability of any such covenant or seeks to avoid the performance or enforcement of any such covenant if such action shall be settled with the consent of the Employee or shall be resolved in a manner that upholds any of the Company's or any of its Affiliate's or an Acquiror's claims.

**(g)** The Employee acknowledges and agrees that the covenants set forth in this Section 1 are a material and substantial part of this Agreement.

**(h)** In addition to the various definitions of various terms provided herein, the following words and phrases shall have the following meanings for purposes of this Agreement:

Exhibit 6

-3-

Assignment of Inventions, Non-Disclosure, Non-Competition, and Non-Solicitation Agreement

Exhibit 2

(i)  *"Affiliate"* of any person or entity shall mean any person, entity or group *(currently existing or hereafter created)* controlling, controlled by or under common control with, the specified person or entity.

(ii)  With respect to the above term *"Affiliate,"* the words **"control of," "control by,"** and **"under common control with"** a person or entity mean the power to direct or cause the direction of the management, policies or affairs of the controlled person, whether through ownership of securities or partnership or other ownership interests, by contract, or otherwise.

(iii)  The phrase *"competes with"* *(as used herein)* shall mean engaging in or about to engage in the production, licensing, servicing, designing, implementing, marketing, selling or other related activity applicable to any product or service included in the Business or any product or service being developed or planned for the Business.

2.  **Return of Company Property.**  The Employee acknowledges and agrees that all computers, hardware, software, electronic and telephonic equipment, records, plans, manuals, guides, memoranda, lists, customer and supplier information, correspondence with customers or representatives, reports, records, charts, advertising materials, and any data and other property delivered to or acquired by the Employee by or on behalf of the Company or any of its Affiliates or by an agent, representative or customer or supplier of any of them *(including, without limitation, any such customers obtained by the Employee)*, and all records compiled by the Employee which pertain to the Business shall be and shall remain the property of the Company or its Affiliates, as the case may be, and shall be subject at all times to the discretion and control of the Company and its Affiliates and shall be delivered promptly to the Company or such Affiliates, without request, by the Employee upon or before the termination of his or her employment with the Company.

3.  **Inventions, Copyrightable Proprietary Rights, and Other Intellectual Property.**  During the course of the Employee's employment, the Employee shall promptly disclose in writing to the Company any and all conceptions and ideas for inventions, improvements, business methods and processes, designs, computer software, computer programs, product developments, regardless whether or not copyrightable, patentable or material, including the improvement of any of the foregoing, whether completed or not, which are prepared, developed or conceived by the Employee, directly or indirectly, alone or in conjunction with another while employed by the Company or within six (6) months thereafter and which are related to the Business or activities or future plans of the Company or any of its Affiliates, or which the Employee conceives as a result of the Employee's employment with the Company **(collectively, "Proprietary Rights")**, and the Employee hereby assigns and agrees to assign from the moment of creation all the Employee's interests therein, royalty-free, to the Company or its nominee. The foregoing shall be disclosed whether conceived or developed during working hours or not, which: **(a)** result from any work performed on behalf of the Company or a research project for the Company, or **(b)** relate in any manner to the Business *(existing or contemplated)*, or **(c)** result from the use of the Company's time, material, employees, or protect the Company's interest therein. At the Company's request and expense, the Employee also shall assist in the facilities. All copyrightable Proprietary Rights shall be considered to be "works made for hire," and the Company shall be considered the author and owner of such copyrightable works. Whenever requested to do so by the Company, the Employee shall execute and deliver to the Company any and all applications, assignments or other instruments and do such other acts that the Company shall request to apply for and obtain letters patent, trademarks, and copyrights with the United States or any foreign country or to otherwise defense and prosecution of said letters patent, trademarks or copyrights as may be required by the Company. The obligations set forth in this Section 3 shall continue beyond the termination of the Employee's employment with the Company and shall be binding upon the Employee's assigns, executors, administrators, and other legal representatives.

(a)  **Prior Inventions.**  Any inventions, patented or unpatented, which the Employee invented prior to the commencement of the Employee's employment with the Company are excluded from the scope of this Agreement. To preclude any possible uncertainty, the Employee has set forth on **Exhibit A** hereto *(called "Prior*

-4-

*Assignment of Inventions, Non-Disclosure, Non-Competition, and Non-Solicitation Agreement*

Exhibit 6

Exhibit 2

*Inventions and Original Works of Authorship")* a complete list of all inventions that the Employee has, alone or jointly with others, conceived, developed or reduced to practice or caused to be conceived, developed or reduced to practice prior to the commencement of my employment with the Company, that the Employee considers to be the Employee's property or the property of third parties *(collectively referred to as "Prior Inventions")*. If disclosure of any such Prior Inventions would cause the Employee to violate any prior confidentiality agreement, the Employee understands that the Employee is not to list such Prior Inventions in **Exhibit A** but only to disclose a cursory name for each such invention, a listing of the parties to whom it belongs, and the fact that full disclosure as to such inventions has not been made for that reason. If additional space is needed in order to provide any information to be included on **Exhibit A**, the Employee has provided and attached hereto additional sheets of paper designated for that purpose.

**(b)** **Moral Rights.** The Employee hereby irrevocably transfers and assigns to the Company any and all "Moral Rights" *(as defined below)* that the Employee may have in or with respect to any of the inventions in which the Company shall have Proprietary Rights as provided herein *("Company Inventions")* and, unless excluded from this Agreement, Prior Inventions. The Employee also hereby forever waives and agrees never to assert any and all Moral Rights that the Employee may have in or with respect to any Company Inventions, and, unless excluded from this Agreement, Prior Inventions, even after termination of my work on behalf of the Company. The term **"Moral Rights"** means any right to claim authorship of an Invention, to object to or prevent the modification of any Invention, or to withdraw from circulation or control the publication or distribution of any Invention, and any similar right, existing under the judicial or statutory law of any country in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."

**(c)** **License of Certain Confidential Information.** If the Employee ever uses or discloses the Employee's own or any third party's confidential information, intellectual property, or inventions when acting within the scope of his or her employment or otherwise on behalf of the company, the Employee hereby grants to the Company a perpetual, irrevocable, world-wide, royalty-free, non-exclusive, sub-licensable right and license to exploit, use, rely upon, and exercise all such confidential information and intellectual property rights therein. The Company shall be entitled to rely upon such license without obtaining any further confirmation. The Employee will not use or disclose a third party's confidential information or intellectual property in the scope of his or her employment without specifically notifying the Company of such confidentiality and without having a previously granted right to do so.

**(d)** **Assistance.** The Employee agrees to assist the Company in every proper way to obtain for the Company and to enforce patents, copyrights, mask work rights, trade secret rights and other legal protections for the Company Inventions in any and all countries. The Employee will execute any documents that the Company may reasonably request for use in obtaining or enforcing such patents, copyrights, mask work rights, trade secrets and other legal protections. The Employee's obligations under this Section 3 will continue beyond the termination of his or her employment with the Company, provided that the Company will compensate the Employee at a reasonable rate after such termination for time or expenses actually spent and incurred by the Employee at the Company's request for such assistance. The Employee appoints the Secretary of the Company as the Employee's attorney-in-fact to execute documents on the Employee's behalf for this purpose.

**4.** **Confidentiality.** The Employee shall not, during the term of this Agreement and thereafter, make any Unauthorized Disclosure. For purposes of this Agreement, **"Unauthorized Disclosure"** shall mean use by the Employee for the Employee's own benefit, or the benefit of another, or disclosure by the Employee to any person other than a person to whom disclosure is reasonably necessary or appropriate in connection with the performance by the Employee of duties as an employee of the Company or any of its Affiliates or as may be legally required, of any Confidential Information relating to the Business or prospects of the Company or any of its Affiliates *(including, without limitation, any information and materials pertaining to any Proprietary Rights)*; provided however, that the term Unauthorized Disclosure shall not apply to any information, knowledge, data or know-how which: **(a)** is or hereinafter becomes a part of the public domain through no fault of the Employee; or **(b)** the Employee can demonstrate was in the Employee's possession prior to the time of disclosure by the Company; or **(c)** the Employee

can demonstrate was received by the Employee from a third party who has not received the same from the Company; or **(d)** is approved for disclosure by prior written consent of the Company; or **(e)** is required to be disclosed by court rule or governmental law or regulation, provided that the Employee gives the Company prompt notice of any such requirement and cooperates with the Company in attempting to limit such disclosure; or **(f)** is independently developed by or for the Employee by persons not having access to Confidential Information hereunder as shown by written records. This confidentiality covenant has no temporal, geographical, or territorial restriction.

   **5.**  **Representations of Employee.**  The Employee confirms that the Employee is not bound by the terms of any agreement or restrictive covenant with any previous employer or other party which restricts in any way **(a)** the Employee's performance of the Employee's duties and responsibilities of employment with the Company, **(b)** the Employee's performance of the Employee's duties and responsibilities under this Agreement, **(c)** the use or disclosure of information, or **(d)** the Employee's engagement in any business, except as may be disclosed in a separate **Exhibit B** attached to this Agreement. The Employee has delivered to the Company true and complete copies of any agreements or restrictive covenants listed on said **Exhibit B**. The Employee represents to the Company that the Employee's execution of this Agreement, the Employee's employment with the Company and the performance of the Employee's duties and responsibilities in the course of the Employee's employment with the Company will not violate any obligations the Employee may have to any such previous employer or any other party. In the Employee's work for the Company, the Employee will not disclose or make use of any information in violation of any agreements with or rights of any such previous employer or other party, and the Employee will not bring to the premises of the Company or any of its Affiliates any copies or other tangible embodiments of non-public information belonging to or obtained from any such previous employment or other party. The Employee agrees to indemnify the Company for any claim, including, without limitation, attorneys' fees and expenses of investigation, by any party that such party may now have or may hereafter come to have against the Company based upon or arising out of any restrictive covenant, non-competition agreement or invention or secrecy agreement between the Employee and such prior employer or other party.

   **6.**  **Complete Agreement.**  There are no oral representations, understandings or agreements with the Company or its Affiliates or any of their directors, officers, or representatives covering the same subject matter as this Agreement, and this Agreement supersedes any and all prior agreements concerning such subject matter between the Employee and the Company or any of its Affiliates. This Agreement is the final, complete and exclusive statement and expression of the Agreement between the Company and the Employee and of all the terms of this Agreement; and it cannot be amended, varied, contradicted or supplemented by evidence of any prior or contemporaneous oral or written agreements. This Agreement may not be later modified except by a further writing signed by the parties, and no term of this Agreement may be waived except by a writing signed by the party waiving the benefit of such terms.

   **7.**  **No Waiver.**  No waiver by the parties hereto of any default or breach of any term, condition or covenant of this Agreement shall be deemed to be a waiver of any subsequent default or breach of the same or any other term, condition or covenant contained herein.

   **8.**  **Assignment; Binding Effect.**  The Employee understands that the Employee has been selected for employment by the Company on the basis of the Employee's personal qualifications, experience and skills. The Employee agrees, therefore, that this Agreement and the rights to the Employee's services may be assigned by the Company at any time without notice to the Employee in connection with a sale or other transfer by the Company of all or substantially all of its assets, but that the Employee cannot assign all or any portion of this Agreement. Subject to the preceding two sentences, this Agreement shall be binding upon and inure to the benefit of the parties thereto and their respective heirs, successors and assigns. It is further understood and agreed that the Company may be merged or consolidated with another entity and that substantially all of the assets of the Company may be purchased by another entity **(an "Acquiror")** and that any such entity shall automatically succeed to the rights, powers, and duties of the Company hereunder.

9. **Notices.** All notices, demands or communications required or permitted hereunder shall be in writing. Any notice, demand or other communication given under this Agreement shall be deemed to be given if given in writing *(including facsimile or similar transmission)* addressed as provided below *(or at such other address as the addressee shall have specified by notice actually received by the addresser)* and if either **(a)** actually delivered in fully legible form to such address or **(b)** in the case of a letter, five (5) days shall have elapsed after the same shall have been deposited in the United States mail, with first-class postage prepaid and sent registered or certified mail. A notice that is transmitted electronically by telecopy *(fax)* or email shall be deemed to have been delivered only if a credible written verification of its delivery to the intended recipient *(essentially a written confirmation of receipt from the recipient)* is received by the transmitting party. Notices shall be addressed as follows:

| To the Company: | To the Employee: |
|---|---|
| Michael Johnson | |
| I , Florida | |
| Facsimile: ( | Facsimile: |
| Email: | Email: |

10. **Severability; Headings.** If any portion of this Agreement is held invalid or inoperative, the other portions of this Agreement shall be deemed valid and operative and, so far as is reasonable and possible, effect shall be given to the intent manifested by the portion held invalid or inoperative. The section headings herein are for reference purposes only and are not intended in any way to describe, interpret, define or limit the extent or intent of this Agreement or of any part hereof.

11. **Gender.** Any pronoun used herein may be deemed to mean the corresponding masculine, feminine or neuter in form thereof and the singular form of any nouns and pronouns herein may be deemed to mean the corresponding plural and vice versa as the case may require.

12. **Governing Law.** This Agreement shall in all respects be construed according to the laws of the State of Florida, without giving effect to its conflicts of law principles.

13. **No Contract of Employment.** Nothing in this Agreement shall be construed as a contract of employment between the Employee and the Company or as a commitment on the part of the Company to retain the Employee in any capacity for any period of time. The Employee acknowledges and agrees that the Employee's employment with the Company is on an at-will basis.

14. **Counterparts; and Electronic Delivery and Preservation.** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and, when taken together, shall constitute one and the same instrument. Signature pages may be detached from one counterpart and attached to another to form a fully executed document. The executed counterparts of this Agreement may be electronically delivered by and to each of the parties by email, telecopy or other form of image copying and transmission; and a compilation of all such electronically delivered signed counterparts shall constitute the equivalent of a compilation of manually signed original counterparts and shall be admissible as the best evidence of the manually signed original documents.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Exhibit 6

-7-

*Assignment of Inventions, Non-Disclosure, Non-Competition, and Non-Solicitation Agreement*

Exhibit 2

|  |  |
|---|---|
| *the "Company":* | *the "Employee":* |
| By: *Michael Johnson* <br> D645GF5501254E6... <br> Michael Johnson, Manager | _____ <br> *(Signature above)* <br> Employee Name: <u>Marcus Estes</u> <br>     *(type or print above.)* |

-8-
*Assignment of Inventions, Non-Disclosure, Non-Competition, and Non-Solicitation Agreement*

Exhibit 6

Exhibit 2

the parties by email, telecopy or other form of image copying and transmission; and a compilation of all such electronically delivered signed counterparts shall constitute the equivalent of a compilation of manually signed original counterparts and shall be admissible as the best evidence of the manually signed original documents.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

*the "Company":*    *the "Employee":*

By: _____    _____
    Michael Johnson, Chief Executive Officer    *(Signature above)*
                                  Employee Name: <u>Marcus Estes</u>
                                        *(type or print above.)*

<u>Exhibit A</u>
TO
ASSIGNMENT OF INVENTIONS, NON-DISCLOSURE,
NON-COMPETITION AND
NON-SOLICITATION AGREEMENT

<u>Prior Inventions and Original Works of Authorship</u>

  The following is a complete list of all Prior Inventions *(if any)*, as defined in this Agreement. The Employee also has indicated in the list below which of the Prior Inventions should be excluded from the assignment of Prior Inventions that the Employee is making under Section 3 of this Agreement.

*(Check the applicable lines below.)*

  <u>X</u> No Prior Inventions. _____ See list below. _____ Additional sheets attached.

**Employee Signature:** /s/ _____

**Employee's Full Name (type or print):** <u>Marcus Estes</u>

**Date: 3/31/23**_____

**Prior Inventions, Patents, and Original Works of Authorship:**

_____

_____

_____

_____

_____

_____

_____

_____

EXHIBIT B
TO
ASSIGNMENT OF INVENTIONS, NON-DISCLOSURE,
NON-COMPETITION AND
NON-SOLICITATION AGREEMENT

The Employee shall disclose in the blank space below any agreement or restrictive covenant with any previous employer or other party which restricts in any way **(a)** the Employee's performance of the Employee's duties and responsibilities of employment with the Company, **(b)** the Employee's performance of his or her duties and responsibilities under this Agreement, **(c)** the use or disclosure of any information, or **(d)** the Employee's engagement in any business.

If the Employee is not bound by the terms of any agreement or restrictive covenant with any previous employer or other party which restricts in any way **(a)** the Employee's performance of his or her duties and responsibilities of employment with the Company, **(b)** the Employee's performance of the Employee's duties and responsibilities under this Agreement, **(c)** the use or disclosure of information, or **(d)** the Employee's engagement in any business, Employee is requested to write the word "None" below, followed by Employee's signature. The absence of any information in this **Exhibit B**, notwithstanding that Employee has not written the word "None," or signed this page, shall confirm, nevertheless, that there are no exceptions to the initial representation made by the Employee under Section 5 of this Agreement.

**Employee Signature:** _[signature]_

**Employee's Full Name (type or print):** Marcus Estes

**Date:** 3/31/23