**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**METRC, INC. and METRC ID, LLC**,

    Plaintiffs,

v.                                         Case No. 8:24-cv-1252-WFJ-CPT
                                       (Consolidated with Case No. 8:25-cv-2067-WFJ-CPT)

**MARCUS ESTES**,

    Defendant.
_____/

# ORDER

Before the Court are Plaintiffs Metrc, Inc. and Metrc ID, LLC's (jointly, "Metrc") Motion to Dismiss. Dkt. 77. Metrc, pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss *pro se* Defendant Marcus Estes' ("Estes") claims currently set forth as counterclaims in the Second Amended Answer. Dkt. 76. Metrc has responded in opposition, Dkt. 82, and Estes has replied. Dkt. 83. After careful consideration, the Court grants Plaintiffs' Motion to Dismiss.

## BACKGROUND

This consolidated action arises out of the employment—and eventual termination—of Marcus Estes by Metrc. Plaintiff Metrc, Inc. contracts with state regulatory agencies overseeing legalized cannabis programs to provide cannabis tracking system ("CTS") software that many states require to track legal cannabis growth, harvesting, processing, testing, transport, and sale. Dkt. 76 ¶¶ 8–10.

Defendant Estes founded Chroma Protocol Corporation ("Chroma"), which developed a blockchain-enabled QR platform, called Chroma Signet, that connects physical objects to digital assets to promote supply chain transparency. *Id.* ¶¶ 14–15. On April 7, 2023, Metrc, Inc., through its subsidiary Metrc ID, LLC, acquired Chroma's assets, including Chroma Signet, via an asset purchase agreement. *Id.* ¶ 16. As part of this acquisition, Metrc hired Estes as an Executive Vice President. *Id.* ¶ 17. Metrc provided Estes with an Offer Letter Agreement that detailed aspects of his employment, including certain incentives. Dkt. 1-1.[1] As a condition of his employment, Estes was also required to sign a Non-Solicitation Agreement. Dkt. 1-2 at 2–4.

On May 23, 2024, Metrc initiated the present action by filing their Complaint against Estes alleging: Breach of Contract based upon Estes' failure to repay the $100,000 signing bonus, as described in the Offer Letter Agreement; Breach of Contract based upon Estes' alleged inducement or attempted inducement of Metrc's customers to cease doing business with Metrc, as described in the Non-Solicitation Agreement; and Tortious Interference with Metrc's business relationships. Dkt. 1. The Court shall refer to this as the Florida Action.

---

[1] Ordinarily, when ruling upon a motion to dismiss, a court considers only the "four corners of the complaint" and the exhibits attached to the complaint. *Keating v. City of Mia.*, 598 F.3d 753, 762 (11th Cir. 2010); *see Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023). However, under the doctrine of incorporation by reference, a court may also consider a document outside the four corners if it "is central to the plaintiff's claims and is undisputed in terms of authenticity," regardless of whether it is "mentioned in" or "attached to" the complaint. *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005); *see Johnson v. City of Atlanta*, 107 F.4th 1292, 1299–1300 (11th Cir. 2024).

On April 4, 2025, Estes filed a separate action in the United States District Court for the District of Oregon, alleging: Whistleblower Retaliation (Claim I) and Wrongful Discharge (Claim II). OR Dkt. 1.[2] The Court shall refer to this subsequent action as the Oregon Action.

On April 29, 2025, Metrc moved to dismiss the Oregon Action under the "first-to-file" rule, arguing that the claims substantially overlapped with those already pending in the Florida Action. OR Dkt. 8. Estes opposed the motion, insisting the cases were completely dissimilar. OR Dkt. 23. On June 9, 2025, the Honorable Judge Karin Immergut granted the motion and dismissed the Oregon Action, finding substantial overlap between the cases because both arose from the circumstances of Estes' employment and termination. OR Dkt. 19.

On June 13, 2025, Estes sought reconsideration of the dismissal of the Oregon Action, again denying any substantial overlap and asserting that the nature of his termination was irrelevant to the Florida Action. OR Dkt. 21. That same day, while reconsideration was pending, Estes moved in the Florida Action for leave to amend his answer to assert counterclaims, which were identical to those dismissed in the Oregon Action. Dkt. 45 at 19 ("The District of Oregon has dismissed Estes' claims

---

[2] The Court takes judicial notice of the Oregon Action and its record for the purpose of resolving this motion. *See Young v. City of Augusta*, 59 F.3d 1160, 1166 n.11 (11th Cir. 1995) (citing *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir.1994)) ("[A] court may take notice of another court's order for the limited purpose of recognizing the judicial action taken or the subject matter of the litigation[.]"). Any reference to the Oregon Action and docket will be cited as "OR Dkt. __" in this Order.

3

on Metrc's motion under the first to file rule. . . . Because the District of Oregon has determined that this Court is *the* appropriate venue for Estes' claims . . . , Estes should be allowed to assert his claims as a counterclaim in this matter."). On July 14, 2025, this Court denied Estes' request to add his claims, finding no good cause for the untimely amendment. Dkt. 53.

The June 13, 2025, request to assert counterclaims came more than nine months after the September 3, 2024, deadline to amend pleadings, which was agreed upon by the parties, Dkt. 22, and set by the case management order. Dkt. 25. This request also came on the same date as the discovery cutoff. Dkt. 37. The unsuccessful mediation had occurred seven months prior. Dkt. 34.

On August 4, 2025, reconsideration was granted in the Oregon Action, reaffirming that substantial overlap existed between the actions, but ordering transfer—rather than dismissal—to the Middle District of Florida to determine "whether the two actions should be consolidated" and "whether [the Oregon Action] is properly brought." OR Dkt. 25 at 3; *see Laskaris v. Fifth Third Bank*, 962 F. Supp. 2d 1297, 1299 (S.D. Fla. 2013) (transferring venue under the first-to-file rule and explaining that "[w]hether or not both cases should proceed independently is to be decided by the first-filed court").

On August 27, 2025, this Court consolidated the Florida Action and the Oregon Action. Dkt. 66. Following further case management proceedings, the Court directed Estes to file his Oregon complaint as amended answer and counterclaims to

4

better organize the consolidated docket, Dkt. 75, which he did on October 20, 2025. Dkt. 76. Metrc now seeks dismissal of Estes' Claims I and II, on the grounds of claims splitting, *res judicata*, or alternatively failure to timely assert compulsory counterclaims, and failure to state a claim. Dkt. 77. The Court now considers the question posed by the United States District Court for the District of Oregon: whether the now-consolidated claims of the Oregon Action were properly brought.

## DISCUSSION

### I. Rule 13(a)

Under Federal Rule of Civil Procedure 13(a), a defendant must assert as a compulsory counterclaim any claim against an opposing party that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). "The requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim 'shall' be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *S. Const. Co. v. Pickard*, 371 U.S. 57, 60 (1962). Two claims arise out of the same "transaction or occurrence" when they bear a "logical relationship" to one another. *Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985) (quoting *Plant v. Blazer Fin. Servs., Inc.*, 598 F.2d 1357, 1361 (5th Cir.

5

1979)). "Compulsory counterclaims which are not brought are thereafter barred." *Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 755 (11th Cir. 2002).

Estes argues in his opposition to Metrc's motion that, although the District of Oregon court found "substantial overlap" in the operative facts, *see* OR Dkt. 25 at 3 ("[Estes'] case substantially overlaps with the earlier-filed action by [Metrc] against [Estes] in the Middle District of Florida"), his Claims I and II and those brought by Metrc are sufficiently disparate as to make his claims permissive. Dkt. 82 at 11. He contends that Claims I and II—for Whistleblower Retaliation and Wrongful Discharge—focus entirely on *pre-termination* circumstances, while those brought by Metrc—Breach of the Offer Letter Agreement for failure to repay the $100,000 signing bonus; Breach of the Non-Solicitation Agreement for Estes' alleged inducement of Metrc's customers to cease doing business with Metrc; and Tortious Interference with Metrc's business relationships—focus solely on *post-termination* conduct. Dkt. 82 at 11.

However, Estes' argument that his counterclaims do not arise out of the same transaction or occurrence is undermined by his own assertion that his alleged protected whistleblowing activity and ensuing unlawful termination excused or justified the breach of the Offer Letter Agreement. *See* Dkt. 60 at 5–8 (showing Estes' response in opposition to Metrc's motion for partial summary judgment). Specifically, Estes argues that:

6

> [B]ased upon his claim for retaliatory discharge under the Oregon whistleblower statute, the termination is voidable due to the remedy of reinstatement, as though the termination never occurred. Thus, a voidable and voided termination, followed by a remedy of reinstatement, would have the legal effect of no termination having occurred under the Offer Letter Agreement and Estes would not be required to repay the signing bonus.

Dkt. 82 at 21. The Court thus finds that it would be necessary to address the merits of Estes' counterclaims while considering the Breach of Contract claims brought by Metrc. Stated differently, the Court finds that one set of claims could not be fully resolved without determining the other—a determination in favor of Estes on Estes' claims would preclude his own liability for Metrc's claims.

Accordingly, because both sets of claims arise from the same core facts concerning Estes' employment and termination—as the resolution of Estes' claims would be dispositive for Metrc's claims—the Court finds an evident logical relationship. *See Republic Health Corp.*, 755 F.2d at 1455 (holding that claims arise out of the same "transaction or occurrence" when they bear a "logical relationship" to one another—that is, when "the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the [plaintiff's] claim rests activates additional legal rights, otherwise dormant, in the defendant."); *see also Healy v. Pavarini Constr. Co. (SE), Inc.*, No. 06-20663-CIV, 2006 WL 8433546, at *1 (S.D. Fla. July 20, 2006) ("[W]here an employer files a counterclaim against a former employee bringing a claim for discriminatory termination, courts have held that the counterclaim is . . . [compulsory if the] employer relies on the facts underlying the

7

counterclaim as the reason for the former employee's termination."). Thus, Estes' Claims I and II are compulsory counterclaims under Rule 13(a), and should have initially been brought as counterclaims as a part of the Florida Action.

Nevertheless, this in itself does not necessitate that Estes' claims be dismissed. "It is true that, under Rule 13(a), the failure to raise a compulsory counterclaim *in one lawsuit* will generally cause that claim to be barred in a *later-filed lawsuit.*" *Byker v. Smith*, No. 2:16-CV-02034-JEO, 2019 WL 4408445, at *7 (N.D. Ala. June 17, 2019) (citing *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1380–82 (11th Cir. 1991); *Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1454–55 (11th Cir. 1985); 6 Wright & Miller, et al., Fed. Prac. & Proc. Civil § 1409 (2d ed. 1990)) ("Perhaps the most important characteristic of a compulsory counterclaim is that it must be asserted in the pending case. A failure to do so will result in its being barred in any subsequent action, at least in the federal courts."). "But that does not imply that a defendant is precluded from amending its answer or other pleading to add a compulsory counterclaim omitted from a prior pleading in the *same pending lawsuit." Id.* (citations omitted); *see EFN W. Palm Motor Sales, LLC v. Hyundai Motor Am. Corp.*, No. 21-80348-CIV, 2022 WL 17583741, at *4 (S.D. Fla. Sept. 12, 2022), *report and recommendation adopted*, No. 21-80348-CIV, 2022 WL 17583738 (S.D. Fla. Oct. 7, 2022). Ultimately, the present issue is not

8

whether Estes' compulsory counterclaims are "barred" under Rule 13(a); it is instead whether these claims may be asserted via Rule 15.[3]

## II.     Rule 15

District courts are generally given broad discretion in deciding whether a party is entitled leave to amend. *Mann v. Palmer*, 713 F.3d 1306, 1316 (11th Cir. 2013). However, this discretion is circumscribed by the allowance of amendments under Rule 15(a)(2), *Byker*, 2019 WL 4408445, at *8, which instructs that the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); s*ee City of Miami v. Citigroup Inc.*, 801 F.3d 1268, 1277 (11th Cir. 2015) (citation omitted). In deciding whether to grant a party leave to amend a pleading, a district court may consider undue delay, among other factors. *Eq. Lifestyle Properties, Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1241 (11th Cir. 2009) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

Here, Metrc claims that "Estes delayed filing [Claims I and II] and then attempted to forum shop by filing these same claims in [the Oregon Action]. Only when that forum-shopping scheme did not work did Estes unsuccessfully (and

---

[3] A Southern District of Florida court has noted that the interaction of Rules 13 and 15 in this manner is something that the Eleventh Circuit has not yet addressed. *EFN*, 2022 WL 17583741, at *4 ("This Rule 15 analysis is somewhat analogous to the Rule 13(a) issue being decided in this case. However, there does not appear to be case law specifically stating that the Court should or can consider undue delay, bad faith, or dilatory motive on the part of a party who is moving to dismiss . . . claims that allegedly should have been filed as compulsory counterclaims in a first-filed, related, ongoing case. It appears then that this is an issue of first impression not yet decided by the Eleventh Circuit.")

untimely) attempt to assert them as Counterclaims in [the Florida Action]." Dkt. 77 at 18. Estes counters with the following:

> In a July 2025 filing before this Court, however, Metrc explained that in 2024, after seeing a draft version of the whistleblower claims, it advised Estes *not* to file them because it would make the case impossible to settle; and that as a result, the parties agreed Estes would wait on filing the whistleblower claims until after a planned mediation. (*See* D.E. 52 at ¶ 6, p. 4) ("*Accordingly, the parties agreed that Defendant [Estes] would refrain from filing the Counterclaim until mediation occurred.*" (emphasis added)).
> The mediation took place on November 6, 2024, but was unsuccessful. (D.E. 35). The only "delay," therefore, about which Metrc potentially could complain is the less than five month period between November 6, 2024[,] and the filing of the [Oregon Action] on April 4, 2025.

Dkt. 82 at 6–7.

The Court has found that it was improper for Estes' claims to be filed in Oregon, as these are compulsory counterclaims that should have initially been brought in the Florida Action. The record shows Estes' then-counsel knew these claims to be compulsory counterclaims, but he did not assert them in the Florida Answer for strategic reasons. *See* Dkt. 52-1 (counsel states, "if we are required to file counterclaims along with our answer (which appears to be the case under FRCP 13)"). He then filed them in Oregon instead. The Court finds that the improper, strategic filing in Oregon and the delay—whichever period of time the Court considers—have caused "a waste of judicial and attorney resources." *EFN*, 2022 WL 17583741, at *4. These issues could have been easily prevented by the timely filing the compulsory counterclaims in the proper jurisdiction.

The Court considers these circumstances in light of its prior decision denying Estes' motion for leave to amend his Answer to assert these claims as counterclaims, Dkt. 53 ("The time for new claims and amendments is well past. No good cause is shown for the motion."), and declines to reach a different conclusion here. Accordingly, the Court finds that Estes' Claims I and II constitute compulsory counterclaims under Rule 13(a) and further concludes that allowance of these claims under Rule 15 is unwarranted due to undue delay. The Court therefore grants Metrc's motion and dismisses Estes' Claims I and II.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Plaintiffs Metrc, Inc. and Metrc ID, LLC's Motion to Dismiss, Dkt. 77, is **GRANTED**. Defendant Estes' claims for Whistleblower Retaliation (Claim I) and Wrongful Discharge (Claim II), Dkt. 76, are **DISMISSED**.

**DONE AND ORDERED** at Tampa, Florida, on February 13, 2026.

/s/ *William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record