**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

METRC, INC., METRC, ID LLC,

        *Plaintiffs,*　　　　　　　**CASE NO.: 8:24-cv-01252**

v.

MARCUS ESTES,

        *Defendant.*
_____/

**PLAINTIFFS' PRETRIAL STATEMENT**

Plaintiffs Metrc, Inc. and Metrc, ID LLC ("Metrc" or "Plaintiffs"), by and through undersigned counsel, and Defendant Marcus Estes ("Estes" or "Defendant"), proceeding *pro se*, pursuant to the Court's Endorsed Order establishing remaining case management deadlines (D.E. 89), and Local Rule 3.06, hereby files this unilateral Pretrial Statement[1] and in support thereof provide the following:

**I.**　　**THE BASIS OF THE COURT'S JURISDICTION**

---

[1] On May 28, 2026, Metrc provided a draft pre-trial statement with the accompanying exhibits to Estes and attempted to confer on the same. Estes did not respond. Metrc followed up by again requesting conferral on Tuesday, June 2. On June 3, 2026, Estes conferred with the undersigned counsel via telephone and stated that he intended to file his own pre-trial statement, exhibit list, and witness list. As of the time of filing, Estes has only provided his list of proposed witnesses (which was first provided after 1 p.m. on June 3). Metrc has not received any exhibit list or pre-trial statement from Estes, and has not received any specific objections to Metrc's proposed pre-trial statement, apart from the correspondence attached hereto as **Exhibit 1**. Accordingly, Metrc requests that, to the extent Estes files any separate pre-trial statement, witness list, exhibit list, or deposition designations, Metrc be permitted to respond and interpose objections as appropriate.

This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as Plaintiffs and Defendant are diverse from one another and the amount in controversy exceeds $75,000.

## II.   CONCISE STATEMENT OF THE ACTION

Metrc sued Estes for Breach of his Offer Letter Agreement due to Estes' failure to repay a $100,000 signing bonus upon his separation from Metrc (Count I); Breach of Contract for Estes' breach of his Non-Solicitation Agreement with respect to several customers and prospective customers, including Holistic, Wyld, and Khalifa Kush (Count II); and Tortious Interference with Advantageous Business Relationships due to Estes' interference with Holistic, Wyld, and Khalifa Kush (Count III). *See* Dkt. No. 1-1.02.

On March 3, 2026, the Court granted Metrc's Motion for Partial Summary Judgment as to: (1) Count I for Estes' Breach of the Offer Letter Agreement in the amount of $100,000, with further requests for relief (including pre- and post-judgment interest accruing from May 9, 2024, and "such other damages, restitution and interest as allowed by law" proceeding to trial); and (2) Count II for Estes' Breach of the Non-Solicitation Agreement as to customers and prospective customer Wyld and Khalifa Kush, respectively, providing permanent injunctive relief with other requests for relief proceeding to trial. Dkt. No. 90. Metrc's claims under Count II with respect to Estes' Breach of the Non-Solicitation Agreement as to customer Holistic are still at issue for trial. *Id.* Metrc's claims under Count III for tortious interference are also proceeding to trial. *See* Dkt. No. 1.

On April 23, 2026, Metrc filed its Motion for pre-judgment interest and Rule 54(b) Final Judgment as to Count I, which remains pending before the Court ("Motion for Final Judgment"). Dkt. No. 92. If Metrc's Motion for Final Judgment is resolved in its favor, and post-judgment interest is assessed pursuant to 28 U.S.C. § 1961, Count I will be fully resolved and will not need to proceed to trial.

### III.   CONCISE STATEMENT OF EACH PARTY'S POSITION

<u>Metrc states as follows</u>:

Metrc is a trusted and experienced provider of cannabis regulatory systems, and employs a compliance management tool via its Track-and-Trace platform and radio frequency identification ("RFID") technology that allows regulatory agencies to closely monitor cannabis supply chains against theft and infiltration. Metrc acquired Estes' former company, Chroma Protocol Corporation, to assist in developing open source barcode labelling software that could be integrated with Metrc's systems.

As part of its acquisition of Chroma Protocol Corporation and its product, Chroma Signet, Metrc offered Estes the ability to stay on at Metrc in the role of Executive Vice President, the terms of which were memorialized in the Company's Offer Letter Agreement. Estes signed the Offer Letter Agreement, which included a one-time signing bonus of $100,000 that Estes was required to repay if, for any reason, Estes was terminated prior to his second anniversary with Metrc. Estes also executed a Non-Solicitation Agreement with Metrc on April 7, 2023.

On April 9, 2024, Metrc terminated Estes. Estes refused to return the $100,000 signing bonus. Estes then began contacting Metrc's customers and potential

customers, including Holistic, Wyld, and Khalifa Kush, to induce them to refrain from or cease doing business with Metrc.  Estes' actions were in breach of his Offer Letter Agreement, Non-Solicitation Agreement, and caused substantial damages to Metrc's advantageous business relationships.

## IV.    LIST OF EACH EXHIBIT WITH NOTATION OF EACH OBJECTION

a.    Metrc's Exhibit List, including Estes' objections, is attached hereto as Exhibit "A."

b.    The Parties had not conferred prior to June 3, 2026. During the June 3 conferral, Defendant indicated that he would submit his own Exhibit List. Plaintiffs have not had the opportunity to review or make any objections to Defendant Estes' Exhibit List.

## V.    LIST OF ALL WITNESSES WHO MAY BE CALLED AT TRIAL

a.    Metrc's Witness List, including Estes' objections, is attached hereto as Exhibit "B."

b.    The Parties had not conferred prior to June 3, 2026, despite Metrc's efforts. During the June 3 conferral, Defendant indicated that he would submit his own Witness List. Plaintiffs have not had the opportunity to properly review or make any objections to Defendant Estes' Witness List.

## VI.    A LIST OF ALL EXPERT WITNESSES

No party is calling an expert witness.

## VII.    A BREAKDOWN OF THE TYPE AND AMOUNT OF MONETARY DAMAGES

    a.    Metrc's requested damages breakdown is attached hereto as Exhibit "C."

**VIII.   LIST OF EACH DEPOSITION OFFERED IN LIEU OF LIVE TESTIMONY**

    a.    Metrc – To the extent such witnesses are unavailable, are outside of subpoena power and refuse to appear, or otherwise fail to appear at trial, Metrc may elect to utilize the deposition testimony taken in this case of the following persons in lieu of live testimony: Marcus Estes. Said deposition designations will be filed contemporaneously with this pre-trial statement. Attached hereto is Exhibit "D", Metrc's proposed Deposition Designations.

    b.    Estes – Defendant has not proffered any deposition testimony.

**IX.   CONCISE STATEMENT OF EACH ADMITTED FACT**

1.    Metrc contracts with state regulatory agencies overseeing legalized cannabis programs to provide its software-as-a-service ("SaaS") product. This product works in conjunction with radio-frequency identification ("RFID") technology to track cannabis growth, harvesting, processing, testing, transport, and sale.

2.    Metrc's goal is to ensure that every cannabis plant and every cannabis product is accounted for from growth/production to consumption, preventing illicit and/or unregulated cannabis from entering the supply chain.

3.    Estes was the founder and CEO of Chroma Protocol Corporation ("Chroma"), which developed Chroma Signet—an "open source barcode labeling

software to create NFT-enabled QR codes that could be encoded with data to supply chain partners and end consumers of cannabis-containing products.

4.      On April 7, 2023, Metrc, through its subsidiary Metrc ID, LLC, acquired the assets of Chroma in an Asset Purchase Agreement.

5.      With the sale of assets of Chroma, Metrc acquired all assets, properties, and contractual rights related to Chroma Signet, [and] also all of the goodwill associated with the company and its assets.

6.      Through this purchase, Metrc sought to further develop Chroma Signet technology to create its own proprietary QR code technology, which was subsequently named Retail ID.

7.      As part of this acquisition, Metrc hired Estes as an Executive Vice President.

8.      Metrc provided Estes with an Offer Letter Agreement that detailed aspects of his employment—including a signing bonus of $100,000, with the stipulation that he would be required to repay that amount within thirty days if his employment with Metrc "terminate[d] prior to the second-year anniversary of [his] start date for any reason.

9.      The Offer Letter Agreement also stipulated that Estes' employment with Metrc was at-will, and that his employment could be terminated at any time with or without cause and with or without notice.

10. As a condition of his employment with Metrc, Estes signed an Assignment of Inventions, Non-Disclosure, Non-Competition, and Non-Solicitation Agreement (the "Non-Solicitation Agreement").

11. The Non-Solicitation Agreement created a two-year bar on Estes from "contact[ing] and past, present, or potential customer of the Company…for the purpose of…attempting to induce the entity to…reduce the amount of business previously done or contemplated to be done by the Company…for such entity or entities[.]"

12. Estes acknowledged that any breach of his Non-Solicitation Agreement would "cause irreparable harm and damage to [Metrc]…, the monetary amount of which may be virtually impossible to ascertain."

13. As Executive Vice President, Estes' job duties were, in part, to continue to market Chroma Signet/Retail ID to brands and distributors for early adoption of the Retail ID technology.

14. One of the early adopters of Retail ID was Wyld—a leading cannabis infused product developer and distributor in the United States.

15. Estes was highly involved in Wyld's post-adoption integration of Retail ID.

16. Metrc terminated Estes on April 9, 2024.

17. The stated reasons for Estes' termination were: (1) Estes' inability to garner Retail ID adoption to any significant degree; (2) undermining of the product

development team, and (3) poor communication and planning leading to failed on-site demonstrations.

18.    Metrc asked that Estes return his $100,000 signing bonus per the Offer Letter Agreement, but Estes refused.

19.    Estes communicated with Metrc's customers and prospective customers after his termination.

20.    On April 11, 2024, Estes sent a text message to Metrc's Product Owner, Mark Goetz, informing Goetz that he had just spoken with a Metrc customer—John Brown of Holistic.  In his message, Estes asserted to Goetz, "I don't think you guys are going to have any customers left when I'm done sharing my side of this story."

21.    On April 22, 2024, Estes sent a text message to Eric Mushrush, the Director of New Market Operations for Wyld.  Estes told Mushrush that he would be speaking out across the whole industry against Metrc, and further warned Mushrush against the use of Retail ID by saying, "I don't think you guys should be one of the few MSOs to back them on this QR code." Subsequently, Wyld expressed concerns about their continued relationship with Metrc in light of Estes's statements and representations regarding Retail ID.

22.    Wyld also specifically instructed Metrc to "refrain from engaging in any press or media discussing Wyld's relationship with Retail ID for the foreseeable future.

23.    Contrary to Metrc's prior conversations with Wyld, Wyld delayed its agreement to expand Retail ID into other markets until Metrc could establish itself in other jurisdictions and markets with other adoption partners.

24.     On April 24, 2024, Estes sent text messages to a prospective customer, Stephanie Arakel, Vice President of Marketing for Khalifa Kush.  Estes communicated the following to Arakel: "Metrc fired me without cause"; "[t]hey're a bunch of fucking weasels"; "with Metrc in control I wouldn't touch it; they're totally corrupt; "I'm going to be leading a campaign against them in the press. I saw some corrupt shit go down and they're trying to muzzle me with legal action"; "I highly recommend you bail on that project"; "They're looking for brands to get behind them but their end goal is corrupt"; and "Don't align with the cops!"

25.     On April 29, 2024, Arakel had a call scheduled with Metrc to discuss Khalifa Kush's adoption of Retail ID.  Immediately prior to this call, Arakel cancelled the meeting and did not re-engage with Metrc.

26.     In subsequent text messages with Estes, Arakel reported, "I cancelled my meeting with them" and "I only scheduled it because they emailed me and said your name[.]"

**27.     <u>CONCISE STATEMENT OF EACH PRINCIPLE OF LAW</u>**

1.     The Court has subject matter jurisdiction over this case.

2.     The Court has personal jurisdiction over the parties.

3.     All necessary parties have been joined.

4.     Venue is proper before this Court.

5.     The Offer Letter Agreement constituted a valid contract.

6.     Estes breached the Offer Letter Agreement.

7.     Estes' breach of the Offer Letter Agreement caused Metrc damage.

9

8. The Non-Solicitation Agreement constituted a valid contract.

9. Estes breached the Non-Solicitation Agreement due to his communications with Holistic, Wyld, and Khalifa Kush asking them to refrain from entering into, cease, or reduce their business relationship with Metrc.

10. Estes' breaches of the Non-Solicitation Agreement caused Metrc damages.

11. Estes' breaches of the Non-Solicitation Agreement caused permanent and irreparable harm.

12. Estes' employment with Metrc was "at-will."

13. Metrc had a business relationship with Holistic and Wyld.

14. Metrc had a prospective business relationship with Khalifa Kush.

15. Estes' was aware of Metrc's business relationship with Holistic and Wyld.

16. Estes was aware of Metrc's prospective business relationship with Khalifa Kush.

17. Estes interfered with Metrc's business relationship with Holistic and Wyld.

18. Estes interfered with Metrc's prospective business relationship with Khalifa Kush.

## X. CONCISE STATEMENT OF EACH ISSUE OF FACT WITHOUT INCORPORATING ANOTHER PAPER

1. If Metrc's Motion for Rule 54(b) Entry of Final Judgment is entered, whether Metrc is entitled to pre-judgment interest for Estes' breach of the Offer Letter Agreement and, if so, in what amount.

2. Whether Metrc can prove entitlement to damages due to Estes' breaches of the Non-Solicitation Agreement and, if so, in what amount.

3.  Whether Metrc can prove entitlement to damages due Estes' interference with Metrc's business relationships or prospective business relationships and, if so, in what amount.

## XI.   CONCISE STATEMENT OF EACH ISSUE OF LAW WITHOUT INCORPORATING ANOTHER PAPER

1.  If Metrc's Motion for Rule 54(b) Entry of Final Judgment is not entered in Metrc's favor, whether Metrc is entitled to pre-judgment interest for Estes' breach of the Offer Letter Agreement and, if so, in what amount.

2.  Whether Metrc can prove entitlement to damages due to Estes' breaches of the Non-Solicitation Agreement and, if so, in what amount.

3.  Whether Metrc can prove entitlement to damages due Estes' interference with Metrc's business relationships or prospective business relationships and, if so, in what amount.

4.  Whether and in what amount Metrc is entitled to attorneys' fees and costs in the event Metrc prevails on its claims.

## XII.   LIST OF EACH PENDING MOTION OR UNRESOLVED ISSUE

1.  Plaintiffs' Motions in Limine (To be filed contemporaneously herewith)

2.  Defendant has not filed any pending or unresolved motions.

## XIII.   STATEMENT OF THE USEFULNESS OF FURTHER SETTLEMENT DISCUSSION

The parties remain willing to discuss settlement at any time as the case progresses, but do not believe another mediation will be useful at this time.

## XIV.   THE SIGNATURES OF COUNSEL FOR ALL PARTIES

In preparing this final pretrial statement, the undersigned have aimed for the just, speedy, and inexpensive resolution of this action.

Dated:       June 3, 2026.

By: */s/ Nicholas S. Andrews*
Edward B. Carlstedt
Florida Bar No. 0136972
ecarlstedt@fordharrison.com
Nicholas S. Andrews
Florida Bar No. 0105699
nandrews@fordharrison.com
FordHarrison LLP
401 East Jackson Street, Suite 2500
Tampa, Florida 33602
Telephone (813) 261-7800
Facsimile (813) 261-7899
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 3, 2026, the foregoing document was electronically filed with the Clerk of Court using CM/ECF, which will send an electronic notification of the filing to all counsel of record, and that a true and correct copy of this motion was sent via email and mail to:

Marcus Estes
1142 Grand Ave.
Astoria, Oregon 97103
Marcus.e@gmail.com

:

By: */s/ Nicholas S. Andrews*
Attorney

12