**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

METRC, INC. and METRC ID, LLC

Plaintiffs,

v.

MARCUS ESTES,

Defendant.

Case Nos.:  8:24-cv-01252-WFJ-CPT

**PLAINTIFFS' MOTION TO STRIKE OR PRECLUDE DEFENDANT'S LATE
DISCLOSED JUSTIFICATION/PRIVILEGE DEFENSE AND
RELATED COLLATERAL EVIDENCE**

Plaintiffs Metrc, Inc. and Metrc ID, LLC (collectively, "Metrc") move to strike or preclude Defendant Marcus Estes ("Defendant" or "Estes") from asserting, presenting evidence on, arguing, or requesting jury instructions concerning any purported justification, privilege, public-concern, whistleblower, cannabis-diversion, regulatory-compliance, or public-safety defense to Metrc's tortious-interference claims. Defendant never pleaded justification or privilege as an affirmative defense. He first attempted to inject that theory into the trial issues through his unilateral pretrial position, after discovery closed, after the dispositive-motion deadline, after the Court granted partial summary judgment, and after the Court already determined that

1

Defendant waived related affirmative defenses and deprived Metrc of discovery on those theories.

The Court should strike or preclude the defense and exclude related collateral evidence. At a minimum, Defendant should be required to proffer any such evidence outside the jury's presence before he is allowed to introduce it or argue it to the jury.

## I.

## INTRODUCTION

This case should not become a mini-trial about California cannabis diversion, alleged "burner" distributors, Metrc's regulatory obligations, Metrc's software capabilities, third-party accusations, or Defendant's claimed public-safety motives. Those issues are not remaining claims or properly preserved defenses. They are the same collateral narrative Defendant previously attempted to use to excuse his conduct on Count I for breach of his Offer Letter Agreement, but did not plead as affirmative defenses and did not allow Metrc to discover in any meaningful way.

The Court has already addressed the problem. In its summary-judgment order, the Court held that Defendant's wrongful-termination and whistleblower theories operated as affirmative defenses because they sought to avoid enforcement of Metrc's claims notwithstanding Metrc's proof. The Court further found that Defendant failed to plead those defenses in any answer and that Defendant denied Metrc the opportunity to conduct discovery on those arguments. The Court therefore concluded

that Defendant "waived the affirmative defenses that he argued excused his breach and did not provide discovery on the same." Dkt. 90 at 14.

That has not stopped Defendant. Defendant's newfound trial position repackages the same factual universe as "purpose," "intent," "justified" interference, and the absence of malice. He states that he will not "re-assert the affirmative defenses addressed in the Court's summary judgment order," but then contends that evidence about "Cannabis diversion and Metrc's systems" is admissible because it purportedly bears on his purpose and intent and on why third parties acted as they did. Dkt. 96-1 at 1-2; see also Dkt. 97-3 at 3-4 (Defendant's Response to Omnibus Motion in Limine). That is not merely a denial of an element. It is an avoidance theory: Defendant seeks to excuse or justify otherwise actionable interference by claiming he acted for public-concern, regulatory, or cannabis-diversion reasons.

The Court should not allow Defendant to accomplish through trial testimony what he failed to do through pleadings and actively prevented during discovery. The prejudice is acute because the collateral issues Defendant seeks to inject would require discovery and proof concerning alleged cannabis-market irregularities, Metrc's alleged ability or obligation to flag irregularities, third-party allegations, alleged public-safety concerns, alleged regulatory duties, and communications with persons such as Elliott Lewis or Catalyst. Defendant blocked discovery into those issues and now seeks to use them as a sword at trial. Rules 8(c), 16, 26(e), 37(c)(1), and 401 through 403 preclude that result.

## II.

## BACKGROUND

Metrc asserted claims for breach of the Offer Letter Agreement, breach of the Non-Solicitation Agreement, and tortious interference with Metrc's customer and prospective-customer relationships. Dkt. 1. The Court granted partial summary judgment on Count I and Count II. As to Count I, the Court held that Defendant is liable to Metrc for breach of the Offer Letter Agreement in the amount of $100,000, subject to further relief issues. Dkt. 90 at 14-15, 19-20. After Metrc's Motion for Final Judgment and Pre-Judgment Interest was granted, Count I is no longer at issue.  As to Count II, the Court held that Defendant is liable for breach of the Non-Solicitation Agreement related to communications with Wyld and Khalifa Kush and permanently enjoined him from further violating the Non-Solicitation Agreement. Id. at 15-20. The Court left for trial: (1) a determination of damages and other relief for Estes' established violations of Count II, (2) a determination of whether Defendant breached the Non-Solicitation Agreement as to Holistic and any associated damanges, and (3) Defendant's liability for tortious interference (Count III). Id.

In opposing summary judgment, Defendant attempted to avoid liability through wrongful-termination and whistleblower theories. The Court rejected that attempt. The Court explained that Defendant did not deny the validity of the repayment provision or his failure to repay the signing bonus, but instead sought to avoid enforcement based on alleged wrongful termination and whistleblower retaliation.

4

Dkt. 90 at 10-11. The Court held that those arguments "operate as affirmative defenses." Id. at 11 (citing *Wright v. Southland Corp.*, 187 F.3d 1287, 1303 (11th Cir. 1999)).

The Court then found that Defendant failed to plead those theories as affirmative defenses in his initial Answer, First Amended Answer, and Second Amended Answer. Dkt. 90 at 11. The Court also found that Defendant did not merely make a pleading mistake; instead, he pursued a litigation strategy wherein Defendant attempted to bring those theories as separate claims, and asserted that those claims were "completely dissimilar" and involved "none of the same facts" as this action. Id. at 11-12 & n.3. The Court dismissed those counterclaims, finding they were compulsory and that Defendant's amendment delay was unwarranted. Dkt. 87 at 10-11.

Most importantly for this motion, the Court found that Defendant prevented Metrc from developing discovery on those same collateral theories. The Court noted that Metrc served written discovery asking Defendant to identify with specificity every law, rule, or regulation Defendant contended Metrc violated, the specific acts allegedly violating those authorities, the date and recipients of any alleged complaints, whether the complaints were oral or written, and how Metrc responded. Dkt. 90 at 12. Defendant objected and refused to provide substantive answers, contending that the operative pleadings did not encompass the subject matter and that the discovery was not reasonably calculated to lead to admissible evidence. Id. at 12-13. Based on that

5

record, the Court found that Defendant failed to provide sufficient notice and waived those arguments as affirmative defenses. Id. at 13-14.

Despite that ruling, Defendant now attempts to inject the same themes into the jury trial on the remaining counts. Defendant asserts that his "purpose and intent" are relevant to the Holistic non-solicitation claim, the "intentional and unjustified" element of tortious interference, and punitive damages. Dkt. 96-1 at 1-2. He also opposes a blanket exclusion of evidence concerning "Cannabis diversion and Metrc's systems," claiming that the evidence bears on his purpose and intent and on why third parties acted as they did. Id. Defendant then states that he is not asserting affirmative defenses but merely denying elements of Metrc's claims. Id. In essence, **Defendant again seeks to base his entire defense on issues that he actively prevented Metrc from discovering.**

Defendant's characterization of his avoidance theories as "elements" of Metrc's claim should be rejected. Defendant is not merely denying that he made the communications, denying what the communications said, or denying causation and damages. He seeks to explain and excuse those communications by invoking cannabis diversion, regulatory concerns, public-safety motives, and alleged Metrc system deficiencies. That is a justification or privilege theory. It was not pleaded. It was not disclosed in a manner that allowed fair discovery. And this Court has already held that related affirmative defenses were waived because Defendant failed to plead them and stymied Metrc's discovery attempts on these issues.

6

## III.

## LEGAL STANDARD

Rule 8(c)(1) requires a party responding to a pleading to "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c)(1). An affirmative defense is generally a defense that, if established, requires judgment for the defendant even if the plaintiff proves its case. *Wright*, 187 F.3d at 1303. The purpose of Rule 8(c) is to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that the party can prepare to litigate it. *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir. 1988). The general rule is that failure to plead an affirmative defense results in waiver. *Id.*; *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010).

Rule 16(e) provides that the pretrial order controls the course of the action unless modified. Fed. R. Civ. P. 16(e). That rule does not permit a party to revive a waived defense through a unilateral pretrial filing after discovery and dispositive-motion practice have closed. *See Morro v. City of Birmingham*, 117 F.3d 508, 515 (11th Cir. 1997) (recognizing prejudice from late-stage changes to issues for trial); *see also Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077-78 (11th Cir. 2003) (district court has broad discretion in managing pretrial orders and trial issues).

Rules 26(e) and 37(c)(1) separately authorize exclusion. Rule 26(e) requires a party to supplement or correct discovery responses in a timely manner when the response is incomplete or incorrect and the information has not otherwise been made

known during discovery. Fed. R. Civ. P. 26(e)(1)(A). If a party fails to provide information required by Rule 26(a) or 26(e), the party may not use that information or witness at trial unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The Eleventh Circuit recognizes the district court's broad discretion to exclude undisclosed evidence and to manage Rule 37 sanctions. *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 593 (11th Cir. 2019); *Prieto v. Malgor*, 361 F.3d 1313, 1318 (11th Cir. 2004); *Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc.*, 389 F.3d 1339, 1348-49 (11th Cir. 2004). Relevant considerations include surprise or prejudice, ability to cure, disruption of trial, the importance of the evidence, and the nondisclosing party's explanation. *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008); *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008).

Evidence is relevant only if it tends to make a consequential fact more or less probable. Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Even relevant evidence may be excluded if its probative value is substantially outweighed by unfair prejudice, confusion, misleading the jury, undue delay, wasting time, or cumulative proof. Fed. R. Evid. 403. Evidence admissible for one purpose but not another may be limited to its proper scope. Fed. R. Evid. 105. That limiting authority is especially important where statements may be admissible to show that they were made or their effect on a listener, but not for the truth of accusations embedded in the statements. *See United States v. Rivera,* 780 F.3d 1084, 1092-93 (11th Cir. 2015); Fed. R. Evid. 801(c).

8

Finally, the law-of-the-case doctrine bars relitigation of issues already decided in the same case, whether expressly or by necessary implication. *This That & The Other Gift & Tobacco, Inc. v. Cobb Cnty., Ga.*, 439 F.3d 1275, 1283 (11th Cir. 2006); *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997). The doctrine protects finality, efficiency, and obedience to prior rulings. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).

## IV.

## ARGUMENT

### A.    Justification or privilege is an affirmative defense under Florida tortious-interference law.

Florida law recognizes tortious interference with contractual and advantageous business relationships where the defendant intentionally and unjustifiably interferes with the relationship and causes damages. *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998); *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). Florida law also recognizes limited privileges or justifications, such as a privilege to protect a legitimate financial interest or the privilege of competition, but only where improper means are not employed. *Johnson Enters.*, 162 F.3d at 1321-22.

Those privileges are affirmative defenses. In *Southeastern Integrated Medical, P.L. v. North Florida Women's Physicians, P.A.*, the First District held that "**privilege to interfere with a contract is a matter to be raised as an affirmative defense**" and that

9

it was improper to consider a defendant's competitive motives on a motion to dismiss. 50 So. 3d 21, 23-24 (Fla. 1st DCA 2010). The court relied on *Abele v. Sawyer*, 750 So. 2d 70, 75 (Fla. 4th DCA 1999), which states that "[j]ustification or privilege to interfere with a contract is a defense to a tortious interference action," and *Melbourne Medical Laboratory, Inc. v. Lab Corp. of America*, 722 So. 2d 962, 964 (Fla. 5th DCA 1998), which treats competition or economic privilege as an affirmative defense to tortious interference.

Defendant's proposed trial theory fits squarely within the category of affirmative defenses. He does not simply deny that he contacted Metrc's customers or prospective customers. Nor does he simply deny causation or damages. He now contends that his communications were motivated by public concern, cannabis diversion, regulatory issues, and alleged Metrc system deficiencies, and that those matters supposedly show he did not act "unjustifiably" or with malice. Defendant attempts to use this theory to avoid liability notwithstanding Metrc's proof that Defendant knowingly and intentionally interfered with Metrc's relationships. Under *Wright*, *Hassan*, and Florida tortious-interference case law, it is an avoidance theory that Defendant was required to plead and provide discovery upon. Defendant did neither. When coupled with Defendant's efforts to stymie Metrc during discovery on these same issues, allowing Defendant's late-disclosed justification defense to proceed would result in a trial by ambush.

10

**B.    Defendant cannot evade Rule 8(c) by relabeling his privilege or justification as "intent," "purpose," or "state of mind"—it is a Florida common law privilege to speak to another about matters of mutual and public interest, and it must be pled as such.**

Defendant's label does not control. Courts look to the substance of the issue, not the caption a party gives it. The Court already applied that principle in this case. In the summary-judgment order, the Court held that Defendant's wrongful-termination and whistleblower theories "operate as affirmative defenses" because Defendant did not deny the contractual provision or his failure to perform, but instead sought to avoid enforcement based on collateral facts. Dkt. 90 at 10-12. The same analysis applies here.

The fact that tortious interference includes an "unjustified" component does not give Defendant license to inject an unpleaded affirmative justification/privilege defense at trial. Metrc must prove intentional and unjustified interference. Defendant may hold Metrc to that burden by challenging whether the communications occurred, what they said, whether he knew of the relationships, whether the interference caused damage, and whether the conduct was improper. But a different issue is presented when Defendant affirmatively contends that his interference was privileged because he acted to advance public safety, expose cannabis diversion, criticize Metrc's regulatory role, or protect third parties from using Retail ID. That is not a mere denial. It is justification or privilege.

For more than 40 years, Florida courts have treated a defendant's justification for interfering tortiously as a privilege that must be pleaded as a defense to the claim.

11

The progeny of this rule is the Fourth District Court of Appeal's decision in *Wackenhut Corp. v. Maimone,* 389 So.2d 656 (4th DCA 1980). There, Chief Judge Letts reasoned as follows:

> We begin, by confirming our holding in *Lake Gateway Motor Inn v. Matt's Sunshine Gift Shops, Inc.*, 361 So.2d 769 (Fla. 4th DCA 1978)*cert. den.*368 So.2d 1370 (Fla. 1979) and reiterated that this tort requires:
>
> 1. the existence of an advantageous business relationship under which the plaintiff has legal rights;
> 2. an intentional and unjustified interference with that relationship; and
> 3. damage to the plaintiff as a result of the defendant's actions.
>
> The first and third of these requirements present little problem in definition or determination, but the second involves the application of words such as "unlawful" "intentional" "unjustified" "malicious" "interfering" and the like. As the Harvard Law Review characterizes these expressions, they are ". . . an agglomeration of catch-words" which have come into usage because of ". . . the search, foredoomed to failure, for a rule of thumb which will justly dispose of any set of facts with the precision of a cream-separator" 37 Harv.L.Rev. 143, 144 (1924)…
>
> Conceding that the intention to interfere with a contractual or business relationship is present under the facts of this case, we must first decide what the ultimate purpose and object was in so interfering. There can be no doubt that the ultimate purpose here was to regain lost business and there is nothing wrong with that. Competition for business is not per se an actionable interference even though it is intentional. **However, as Dean Prosser puts it, we must agree that the modern day concept of the tort here considered supports the theory that clear allegations of an intentional interference with an existing contractual or business relationship, coupled with legal rights and damage, state a prima facie case**. William L. Prosser, Torts 942 (4th Ed. 1971). <u>**Thus we agree that in the face of such allegations the burden shifts to the interferer to establish that the interference was justified**</u>**. In the words of Dean Prosser, this "justification" is better understood as a showing that the "**. . . <u>**interference is privileged by reason of the interests furthered by his conduct**</u> . . .

12

*Id.* at 658 (emphasis added). *See also Abele,* 750 So.2d at 75 ("Justification or privilege to interfere with a contract is a **defense** to a tortious interference action.")  Defendant has simply misstated his burden here.

The distinction matters because Defendant's theory would expand trial far beyond the remaining issues. If Defendant is permitted to present alleged cannabis-diversion and regulatory evidence as "intent," Metrc will be forced to disprove the collateral premise of the supposed justification: whether diversion occurred, whether Metrc had a legal obligation to flag it, whether Metrc's systems could or should have flagged it, whether third-party accusations were true, whether customers acted for those reasons, and whether any of that reasonably justified Defendant's interference with Metrc's customers. That is precisely the type of  waived affirmative defense and collateral mini-trial that Rules 8(c), 37, and 403 are designed to prevent.

**C.    The Court's prior rulings and law of the case bar Defendant from reviving the same collateral narrative.**

The Court's prior rulings independently support preclusion. The Court dismissed Defendant's whistleblower-retaliation and wrongful-discharge claims as compulsory counterclaims and because amendment was unwarranted due to undue delay. Dkt. 87 at 10-11. The Court then held at summary judgment that Defendant's related wrongful-termination and whistleblower theories were waived as affirmative

13

defenses because they were not pleaded and because Defendant refused to provide discovery on those issues. Dkt. 90 at 10-14.

Defendant's current justification theory is an attempted end run around those rulings. He now seeks to use the same factual universe--alleged regulatory violations, alleged whistleblowing, alleged public-safety concerns, alleged cannabis diversion, and alleged Metrc system failures--to excuse his post-termination tortious contacts with Metrc's customers and prospective customers. The same facts cannot be barred as waived affirmative defenses and dismissed counterclaims, yet simultaneously tried to the jury under the labels "intent," "purpose," "public concern," or "unjustified."

The law of the case doctrine forecloses that maneuver. The Court has already determined that these theories were not properly preserved as defenses and that Defendant's discovery conduct deprived Metrc of the ability to develop discovery on these issues. Dkt. 90 at 13-14. Defendant cannot avoid that ruling by changing labels. *See This That & The Other Gift & Tobacco*, 439 F.3d at 1283 (discussing applicability of the law of the case doctrine); *Escobar-Urrego*, 110 F.3d at 1560 (same).

**D.    Defendant blocked discovery into the same collateral issues he now wants to try.**

The prejudice is not speculative. Metrc served targeted discovery asking Defendant to identify the laws, rules, or regulations he claimed Metrc violated; the specific acts allegedly violating those authorities; the dates and recipients of Defendant's alleged complaints; whether each complaint was oral or written; and how

14

Metrc responded. Dkt. 90 at 12. That discovery went directly to Defendant's claimed whistleblower, regulatory, and public-concern narrative and to the same cannabis-diversion and system-deficiency issues he now wants to place before the jury as evidence of his purpose, intent, justification, or the reasons third parties acted.

Defendant refused to provide substantive discovery. He objected that the operative pleadings did not encompass the subject matter and that the interrogatory was not reasonably calculated to lead to admissible evidence. Dkt. 90 at 12-13. He did not supplement in a manner that allowed Metrc to test the alleged factual basis for cannabis diversion, regulatory concerns, Metrc's alleged failure to flag irregularities, alleged public-safety concerns, or any purported justification for post-termination customer interference.  And he repeatedly told the Court that his whistleblower claims were "completely dissimilar [to] and involve none of the same facts" as his defenses to the instant matter.  Dkt. 90 at 12.

Defendant's late justification theory is especially improper because Defendant affirmatively stymied discovery directed to the very same issues he now seeks to try. Metrc did not merely lack notice in the abstract. Metrc served discovery asking Defendant to identify the specific laws, rules, regulations, alleged complaints, alleged violations, recipients, dates, and responses underlying his cannabis-diversion, regulatory, whistleblower, and public-safety narrative. Defendant refused to provide substantive responses, taking the position that those issues were outside the pleadings and not reasonably calculated to lead to admissible evidence. Having blocked

15

discovery on that basis, Defendant cannot now reverse course and contend that the same factual narrative is central to his alleged intent, state of mind, justification, or privilege at trial. Allowing him to do so would reward gamesmanship, prejudice Metrc's trial preparation, and force a collateral mini-trial on matters Metrc was deprived of the opportunity to investigate through written discovery, depositions, expert analysis, and dispositive motion practice.

The Court already recognized the consequence. The Court found that Defendant failed to provide sufficient notice and waived those arguments as affirmative defenses. Dkt. 90 at 13-14. The Court further concluded that Defendant "waived the affirmative defenses that he argued excused his breach and did not provide discovery on the same." Id. at 14. Defendant should not be permitted to relitigate that finding by saying the same facts now go to "state of mind" or "intent."

Allowing the late justification theory would require Metrc to litigate issues for which discovery was never fairly developed: alleged diversion in California; alleged burner distributors; alleged conspiracies or irregular data; Metrc's alleged legal duties under state or federal cannabis regulations; Metrc's software architecture and data-analysis capabilities; communications with Catalyst, Elliott Lewis, regulators, customers, or third parties; alleged reasons customers acted; and alleged public-safety impacts. Those issues would require different witnesses, different documents, technical proof, regulatory proof, and likely expert testimony. They would fundamentally alter the scope of the case. Defendant denied Metrc that discovery

16

when it mattered and argued that those issues were not before this Court. Rule 37(c)(1) and Rule 403 bar him from using those withheld issues at trial.

**E.     A unilateral pretrial statement does not amend the pleadings or cure the prejudice.**

Defendant's unilateral pretrial position does not cure the waiver. It is true that an unpleaded affirmative defense may sometimes be tried where the opposing party has notice and suffers no prejudice. *Hassan*, 842 F.2d at 263; *see also Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1350-51 (11th Cir. 2007). This is the opposite case.

First, Defendant has not included justification in an agreed or Court-entered pretrial order. He raised the theory through a unilateral trial position after discovery and dispositive-motion practice. Metrc did not agree to try the issue.

Second, eve-of-trial notice is not meaningful where the opponent already lost the opportunity to conduct discovery, retain experts, depose witnesses, test third-party allegations, and move for summary judgment on the defense. The point of Rule 8(c) is not merely to label a defense before the jury is sworn; it is to allow the opposing party to prepare to litigate the additional issue. *Hassan*, 842 F.2d at 263.

Third, this Court has already found prejudice in substance. It found that Defendant did not plead the related affirmative defenses and did not provide discovery on the same. Dkt. 90 at 13-14. That finding forecloses Defendant's attempt to use a pretrial statement as a vehicle for reviving the same issues.

**F.     The collateral evidence should be excluded under Rules 401, 402, and 403.**

17

The Court should also exclude evidence and argument concerning alleged cannabis diversion, burner distributors, black-market activity, regulatory violations, public-safety concerns, Metrc software deficiencies, or alleged failures to flag irregularities under Rules 401, 402, and 403.

The remaining trial issues are narrow. The jury does not need to decide whether Metrc should have flagged alleged irregular cannabis data. It does not need to decide whether California cannabis diversion occurred. It does not need to decide whether Catalyst, Elliott Lewis, or others believed Metrc's system was inadequate. It does not need to decide whether Defendant subjectively considered himself a whistleblower or public-safety advocate. Those issues are not elements of Metrc's remaining claims, and Defendant did not preserve them as defenses.

The prejudice and confusion are substantial. Permitting Defendant to introduce those issues would create a trial within a trial about cannabis regulation, Metrc's software, third-party allegations, state-agency relationships, and alleged black-market conduct. Metrc would have to rebut accusations of regulatory misconduct and software deficiency that Defendant refused to disclose and develop in discovery. The jury would be invited to decide whether it approves of Metrc's regulatory role instead of deciding whether Defendant breached the Non-Solicitation Agreement as to Holistic, whether damages resulted from his already-adjudicated breaches as to Wyld and Khalifa Kush, and whether Defendant tortiously interfered with Metrc's relationships.

18

The probative value, if any, is slight. Defendant's actual statements to customers may be admissible for limited purposes, such as proving what he said, his intent to induce reduced business, or the effect on listeners, subject to appropriate limiting instructions and other evidentiary objections. But Defendant should not be allowed to prove the truth of collateral accusations or use those accusations to justify his conduct. Evidence about the truth or supposed validity of cannabis-diversion, regulatory, or software-defect allegations is irrelevant or substantially outweighed by the risk of unfair prejudice, confusion, delay, and mini-trials.

### G.    Elliott Lewis should be excluded as a witness or participant in Defendant's late justification theory.

Defendant should likewise be precluded from using Elliott Lewis as a witness, participant, conduit, or evidentiary vehicle for the waived justification theory. Lewis was not timely disclosed as a witness with knowledge of the remaining trial issues (see **Exhibit A**, Defendant's Amended Responses to Plaintiffs' Interrogatories), and Defendant cannot use him at trial to introduce the same cannabis-diversion, regulatory-compliance, public-safety, or whistleblower narrative that Defendant failed to plead and refused to develop in discovery.

The prejudice is concrete. If Defendant believed Lewis possessed relevant knowledge supporting a justification or privilege defense, Defendant was required to: (1) disclose the defense in his responsive pleading, and (2) disclose Lewis and the substance of that knowledge during discovery. He did neither. Metrc therefore had no

19

fair opportunity to pursue discovery directed to Lewis, test the basis for any such testimony, explore the limits of his personal knowledge, obtain contrary evidence, or address the theory in dispositive motion practice. That prejudice is compounded because the Court has already found that Defendant deprived Metrc of discovery on these same collateral theories. Defendant should not be permitted to cure that waiver by presenting Lewis at trial as the face of the very defense that was never properly preserved.

Lewis's anticipated participation also fails under Rules 401, 402, and 403. To the extent Lewis would testify about alleged cannabis diversion, alleged burner distributors, alleged regulatory concerns, alleged software issues, or alleged complaints unrelated to the specific customer communications at issue, that testimony does not make any remaining element materially more or less probable. It would instead invite a collateral trial about Metrc's regulatory platform, state-law cannabis compliance, third-party accusations, and Defendant's asserted whistleblower narrative. The danger of unfair prejudice, confusion, delay, and jury distraction substantially outweighs any marginal probative value.

Nor should Lewis be permitted to supply Defendant's state of mind by hearsay, speculation, or after-the-fact narrative. Defendant's own communications may be admitted, if otherwise admissible, for limited purposes tied to the remaining claims. But Lewis cannot be used to bootstrap an unpleaded privilege defense, narrate collateral accusations, or suggest to the jury that Defendant's interference was legally

20

justified because Lewis or others supposedly shared regulatory concerns. Such use would circumvent Rule 8(c), Rule 26(e), Rule 37(c)(1), the Court's prior waiver ruling, and the limits of Rules 602, 701, 801, and 802.

Accordingly, the Court should exclude Elliott Lewis from testifying or participating in any manner concerning Defendant's alleged justification, public concern, whistleblower theory, cannabis-diversion theory, regulatory-compliance theory, or related collateral matters. At minimum, Defendant should be required to proffer outside the presence of the jury precisely what Lewis would say, when the information was disclosed, how it relates to a remaining element rather than a waived defense, and why the testimony is not barred by Rules 26(e), 37(c)(1), 401, 402, 403, 602, 701, 801, and 802.

## H. The defense also fails because Defendant has identified no cognizable privilege that permits him to interfere with Metrc's customers.

Even if the Court were to consider Defendant's theory on the merits, he has not identified a Florida-law privilege that would allow a former executive bound by a non-solicitation covenant to contact his former employer's customers and prospective customers and urge them to stop or reduce business. Florida privileges in tortious-interference cases are limited. *Johnson Enterprises* protects actions taken to safeguard one's own financial interest, so long as improper means are not employed. 162 F.3d at 1321-22. *Southeastern* and *Abele* recognize justification or privilege as a defense, but

not as a free-floating public-concern exception to private restrictive covenants or tortious interference claims.

Defendant's alleged public-safety or whistleblower motive is not a pleaded legal privilege. Nor does it excuse use of improper means, disparagement, or direct inducement of customer nonperformance. The Court has already determined, with respect to Wyld and Khalifa Kush, that Defendant's messages themselves evidenced his purpose to induce those entities to reduce their Metrc business. Dkt. 90 at 16-18. A jury should not be asked to decide whether those already-adjudicated inducements were socially or politically justified.

**I.      Defendant should not receive jury instructions or argument on justification, privilege, public concern, or whistleblower status.**

Because Defendant did not plead justification or privilege and did not provide discovery on the factual basis for that theory, he should not be permitted to request a jury instruction, verdict-form question, opening-statement theme, closing argument, or witness examination framed around justification, privilege, public concern, whistleblower status, cannabis diversion, regulatory compliance, or public safety as a defense to tortious interference. A jury instruction on an unpleaded and undisclosed defense would compound the prejudice by inviting the jury to decide a defense Metrc had no fair opportunity to litigate.

This requested relief does not prevent Defendant from contesting the actual elements left for trial. Defendant may deny that he breached the Non-Solicitation

22

Agreement as to Holistic, deny causation, contest damages, contest punitive damages, and cross-examine witnesses within the bounds of the Federal Rules of Evidence and this Court's prior orders. What he may not do is convert trial into a forum for litigating an unpleaded justification defense or the truth of collateral accusations he withheld during discovery.

## V. CONCLUSION

For the foregoing reasons, Metrc requests that the Court enter an order:

1. Striking, deeming waived, or precluding Defendant's late-disclosed justification, privilege, public-concern, whistleblower, cannabis-diversion, regulatory-compliance, or public-safety defense to Metrc's tortious-interference claims;

2. Precluding Defendant from presenting evidence, testimony, exhibits, jury instructions, verdict-form issues, opening statement, closing argument, or examination themes that use alleged cannabis diversion, alleged burner distributors, black-market activity, regulatory violations, Metrc software deficiencies, Metrc's alleged failure to flag irregularities, public-safety concerns, whistleblower status, or similar collateral issues to justify or excuse Defendant's interference with Metrc's customers or prospective customers;

3. Excluding related collateral evidence under Rules 401, 402, 403, 602, 701, 702, 801, 802, 105, 26(e), and 37(c)(1), while preserving Metrc's ability to introduce Defendant's actual customer communications for proper purposes; and

4. Prohibiting Defendant from requesting jury instructions or verdict-form questions on justification, privilege, public concern, whistleblower status, cannabis diversion, regulatory compliance, or public safety.

5. Prohibiting Elliot Lewis from testifying because he was not disclosed and cannot provide any relevant testimony.

## LOCAL RULE 3.01(g) CERTIFICATE

Counsel for Metrc has conferred with Defendant regarding the subject matter of this motion, and Defendant opposes the relief requested.

Dated this 23rd day of June, 2026.

FORDHARRISON LLP

By:    /s/ *Nicholas S. Andrews*
       Edward B. Carlstedt
       Florida Bar No. 0136972
       ecarlstedt@fordharrison.com
       Nicholas S. Andrews
       Florida Bar No. 0105699
       nandrews@fordharrison.com
       FordHarrison LLP
       401 East Jackson Street, Suite 2500
       Tampa, Florida 33602
       Telephone (813) 261-7800
       Facsimile (813) 261-7899
       Attorneys for Plaintiffs

24

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 23, 2026, a true and correct copy of the foregoing was filed with the Clerk of the Court using CM/ECF, which will send an electronic notification of the filing to all counsel of record, and that a true and correct copy of this motion was sent via email and mail to:

Marcus Estes
1142 Grand Ave.
Astoria, Oregon 97103
Marcus.e@gmail.com

/s/  *Nicholas S. Andrews*
Attorney